**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000444
28-DEC-2023
08:04 AM
Dkt. 142 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

MAUI LANI NEIGHBORS, a Hawaiʻi Nonprofit
Corporation, Plaintiff-Appellant, v.
STATE OF HAWAIʻI; STATE OF HAWAIʻI DEPARTMENT
OF LAND AND NATURAL RESOURCES; SUZANNE D. CASE,
in her official capacity as chair of the State
of Hawaiʻi Board of Land and Natural Resources;
COUNTY OF MAUI; COUNTY OF MAUI PLANNING COMMISSION;
COUNTY OF MAUI DEPARTMENT OF PLANNING; WILLIAM
SPENCE, in his official capacity as County of
Maui Planning Director, Defendants-Appellees, and
JOHN DOES 1-10, JANE DOES 1-10, AND DOE PARTNERSHIPS,
CORPORATIONS, GOVERNMENTAL UNITS OR OTHER
ENTITIES 1-10, Defendants

NO. CAAP-16-0000444

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 14-1-0501)

DECEMBER 28, 2023

GINOZA, CHIEF JUDGE, HIRAOKA AND NAKASONE, JJ.

OPINION OF THE COURT BY GINOZA, CHIEF JUDGE

In this land use dispute, Plaintiff-Appellant Maui Lani
Neighbors, Inc. (**MLN**), appeals from the "Final Judgment" entered

by the Circuit Court of the Second Circuit (**Circuit Court**),[1] which entered judgment against MLN and in favor of Defendants State of Hawaiʻi, State of Hawaiʻi Department of Land and Natural Resources (**DLNR**), State of Hawaiʻi Board of Land and Natural Resources (**BLNR**), and Dawn N.S. Chang,[2] in her official capacity as Chair of BLNR (collectively, the **State**), Defendants County of Maui, County of Maui Planning Commission (**Planning Commission**), County of Maui Department of Planning, and Kathleen Aoki,[3] in her official capacity as County of Maui Planning Director (collectively, the **County**), and Intervenor Alexander & Baldwin, LLC (**A&B**).

In this action, MLN asserts claims related to a county special use permit (**CUP**)[4] to develop a Central Maui Regional Sports Complex (**Sports Park**) on land acquired from A&B. The property at issue is sixty-five acres and is owned by DLNR. Individuals who are members of MLN participated in a Planning Commission hearing regarding the CUP, held in March 2014, but did not intervene in that proceeding and did not appeal from the Planning Commission's issuance of the CUP.[5] Instead, approximately six months after the CUP was issued, MLN filed this lawsuit.

In its First Amended Verified Complaint (**First Amended Complaint**), MLN asserts nine counts: **Count I**, violation of zoning under Hawaii Revised Statutes (**HRS**) § 46-4 (2012); **Count II**, declaratory relief that the CUP is void; **Count III**, the Special Use Ordinance is unconstitutionally vague and ambiguous; **Count IV**, declaratory relief as to interpretation of the PK-3 regional

---

[1] The Honorable Peter T. Cahill presided.

[2] Dawn N.S. Chang is automatically substituted for William Aila, pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1).

[3] Kathleen Aoki is automatically substituted for William Spence, pursuant to HRAP Rule 43(c)(1).

[4] For consistency, we use the term "CUP", which was used in the administrative and Circuit Court decisions in this case.

[5] On May 12, 2014, one future member of MLN filed an appeal from the Planning Commission's decision to approve the CUP. However, that appeal was dismissed about a month later.

park district; **Count V,** violations of the Hawaiʻi Environmental Policy Act (**HEPA**); **Count VI,** violation of article XI, section 9 of the Hawaiʻi Constitution; **Count VII,** public nuisance; **Count VIII,** violation of due process; and **Count IX,** declaratory and other relief that notice to surrounding neighbors was inadequate.

Except for Count VII (public nuisance),[6] the Circuit Court dismissed all counts in the First Amended Complaint on grounds that MLN failed to exhaust administrative remedies by not intervening in the CUP approval process and thereafter filing an HRS § 91-14 (2012) appeal for judicial review of the Planning Commission's decision. The Circuit Court also ruled that MLN failed to prove that exhausting administrative remedies would have been futile. The Circuit Court thus determined that, except for Count VII, it lacked subject matter jurisdiction over MLN's claims.

On appeal, MLN asserts three points of error: (1) the Circuit Court erred by applying the doctrine of exhaustion because the Planning Commission did not have exclusive original jurisdiction over MLN's claims; (2) even if the doctrine of exhaustion applied, the Circuit Court erred in ruling the futility exception was not met; and (3) the Circuit Court erred by staying the entire case under the primary jurisdiction doctrine where only one discrete claim, Count 1(F), was within the Land Use Commission's (**LUC**) jurisdiction.

With regard to Counts I, II, III, IV, VIII, and IX, we conclude they were properly dismissed for failure to exhaust administrative remedies, but for reasons different than the Circuit Court.

With respect to Count V, to the extent Count V seeks to invalidate the CUP, dismissal was warranted. However, to the extent Count V seeks relief other than to invalidate the CUP, dismissal based on failure to exhaust administrative remedies was not proper.

---

[6] In the Final Judgment, Count VII was dismissed without prejudice. MLN does not challenge the dismissal of Count VII.

With respect to Count VI, we conclude that the exhaustion of administrative remedies doctrine and the primary jurisdiction doctrine do not apply to claims brought under article XI, section 9, because those doctrines are not legislatively-created limitations to such claims. However, the legislature has limited declaratory judgment actions under HRS § 632-1 (2016), such that the Circuit Court does not have jurisdiction over MLN's article XI, section 9 claims defined by HRS Chapters 46 and 205, because those claims challenge the validity of the CUP. To the extent MLN's article XI, section 9 claims as defined by HRS Chapter 343 seek to invalidate the CUP, the Circuit Court lacks jurisdiction; but to the extent these claims seek other relief, they are not precluded by HRS § 632-1.

We therefore affirm in part and vacate in part. We remand to the Circuit Court to address Count V (HEPA) and Count VI (the article XI, section 9 claim defined by HRS Chapter 343), to the extent those claims seek relief other than to invalidate the CUP.

## I. FACTUAL BACKGROUND

The Circuit Court made extensive findings of fact (**FOF**) after an evidentiary hearing. MLN does not challenge most of the Circuit Court's findings, and although it briefly asserts the Circuit Court erred in FOFs 35-69 (regarding the futility exception to the doctrine of exhaustion), it does not provide any argument as to why those findings are erroneous. Thus, the Circuit Court's unchallenged findings are binding upon this court and MLN has waived any purported challenge to FOFs 35-69. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002); HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

### A. Procedural History in Circuit Court

The relevant procedural history from the Circuit Court's "Findings of Facts, Conclusions of Law, and Order" (**FOFs/COLs and Order**), entered on February 23, 2015, are as follows:

1. On September 2, 2014, Plaintiff Maui Lani Neighbors, Inc. filed its Verified Complaint.[7]

2. On September 8, 2014, Plaintiff filed its Motion for Preliminary Injunction. The motion was set for hearing on October 15, 2014.

3. On September 9, 2014, Plaintiff filed the [First Amended Complaint].

4. On September 22, 2014, the County Defendants filed a Motion to Dismiss in Part Plaintiff's First Amended Complaint.

5. On October 15, 2014, the Court held a hearing on the County Defendants' Motion to Dismiss in Part. The Court denied the motion as to Count I.F of the First Amended Complaint. The Court stayed the remainder of the motion, discovery, and all other proceedings, pending resolution of Plaintiff's already-filed Petition for Declaratory Order (**"Petition"**) to the State of Hawaiʻi Land Use Commission (the **"LUC"**).

6. On October 29, 2014, the Court entered its Order Denying in Part the County Defendants' Motion to Dismiss in Part, Staying All Further Proceedings in this Matter, and Deferring to LUC. The order stated that the Court would "defer to the [LUC] for determination as to any potential violation by any person or party of the Decision and Order entered by the LUC in Docket No. A-10-789 dated June 21, 2012 [(**'LUC D&O'**)]."

7. On November 25, 2014, the Court held a status conference. The parties advised the Court that on November 20, 2014, the LUC denied Plaintiff's Petition. The Court scheduled further hearing on the County Defendants' Motion to Dismiss In Part on December 10, 2014, and ordered that the hearing on Plaintiff's Motion for Preliminary Injunction would start on December 22, 2014 and that all parties should be prepared to proceed with witnesses, evidence, and testimony.

8. On December 5, 2014, the State Defendants filed their Motion and an *Ex Parte* Motion to Shorten Time for Hearing on the Motion.

9. The State Defendants' contended that Plaintiff had failed to exhaust its administrative remedies and failed to bring its challenge under [HRS] chapter 343 within the time provided by statute.

. . . .

11. At the hearing held on December 10, 2014, for the County Defendants' Motion to Dismiss in Part, the Court denied the County Defendants' motion in its entirety. The same day, the Court also granted the State Defendants' Motion to Shorten Time for Hearing on the Motion for Partial Dismissal and orally informed the parties it would be heard on December 22, 2014. The Court also requested supplemental briefing from all parties on two issues: 1) Did the Court

---

[7] The Circuit Court found and it is not disputed that MLN is a non-profit member corporation that was incorporated on June 12, 2014. The Planning Commission approved the CUP on March 25, 2014.

have subject matter jurisdiction given the issues raised in the motion filed by the State; and 2) was Plaintiff collaterally estopped from pursuing its claims.

. . . .

19. On December 22, 2014, the Court held a hearing on the Motion for Partial Dismissal. After hearing argument from the parties, the Court determined that a question of fact existed as to whether the futility doctrine excused Plaintiff from having to exhaust its administrative remedies. Accordingly, the Court immediately began an evidentiary hearing, took testimony and received evidence.

20. On December 22, 2014, Plaintiff called Mary Spencer, Ph.D. (**"Dr. Spencer"**), Paul Fasi (**"Mr. Fasi"**), Senior Planner of the Planning Department, and Harley Manner, Ph.D. (**"Dr. Manner"**). . . .

21. On December 23, 2014, the Court held a further evidentiary hearing on the Motion. Plaintiff called Dr. Manner, Carty Chang, a State DLNR representative, and Holden Gannon (**"Mr. Gannon"**). After Plaintiff rested, A&B re-called Dr. Manner and Will Spence, Director of the Department of Planning, County of Maui. . . . .

22. At the conclusion of the December 23, 2014 hearing, the Court requested that the parties return on December 31, 2014. Additionally, the Court requested supplemental briefing regarding the failure to exhaust administrative remedies, futility, and the issues that would remain if it granted the Motion.

23. On December 30, 2014, Plaintiff filed its Memorandum re: Court's Subject Matter Jurisdiction. On the same day, the State Defendants filed a Memorandum Regarding Subject Matter Jurisdiction, and the County Defendants filed a Supplemental Brief Regarding Factual and Legal Distinctions of *Kellberg.* A&B filed its Supplemental Memorandum Regarding Exhaustion of Administrative Remedies. On the same day, the Court entered its written Order Granting A&B's Motion to Intervene.

24. On December 31, 2014, the Court held a further hearing on the State Defendants' Motion for Partial Dismissal. After hearing argument from the parties, the Court granted the State Defendants' Motion for Partial Dismissal and dismissed all Counts in the First Amended Complaint except for Count VII.

25. On January 14, 2015, Plaintiff withdrew its Motion for Preliminary Injunction.

(Citations to the record omitted.)

### B. Substantive Findings

The Circuit Court made the following relevant substantive findings:

31. Plaintiff's officers and members include the following individuals:
   a. Dr. Manner, who serves as Plaintiff's Vice-President;
   b. Dr. Spencer, who is a member of Plaintiff;

6

c. Mr. Gannon, who serves as Plaintiff's Treasurer;
d. David Potter, who serves as Plaintiff's President;
e. Tina Hoenig, who previously served as Plaintiff's President and currently serves as the fifth member of the five-person Board of Directors;
        i. Mark Hoenig, who is also a member; and
        ii. Neal Sorensen, who is also a member.

. . . .

33. DLNR intends to build a regional park for general public use in Central Maui (the **"Sports Park"**).  The Sports Park is planned to include, among other things, a high school baseball field, softball fields, youth baseball fields, and soccer fields.

34. The Property is within the State Urban Land Use District and is zoned agricultural under County zoning.

### 3. The Final Environmental Assessment

35. DLNR prepared an environmental assessment for the Sports Park.

36. Plaintiff admitted that on June 23, 2013, the State of Hawaiʻi Office of Environmental Quality Control (the **"OEQC"**) published DLNR's findings of no significant impact (**"FONSI"**) based on the Central Maui Regional Park Final Environmental Assessment (the **"FEA"**).

37. No one filed on appeal from the FONSI.

38. DLNR identified BLNR as the accepting authority for the FEA.  On October 11, 2013, BLNR accepted the FEA as final.

### 4. The CUP Application

39. On October 10, 2013, DLNR applied for a Special Use Permit (**"CUP"**) for the Sports Park from the County of Maui.

40. On October 9, 2013, DLNR sent notice of its application to surrounding property owners.

41. DLNR failed to send the October 9 notice to all owners and lessees of record located within a five-hundred-foot distance from the Property.

42. On November 6, 2013, DLNR submitted an amended application for a CUP (the **"Application"**).

43. On November 14, 2013, DLNR sent notice of the amended Application to surrounding property owners.

44. DLNR failed to send the November 14, 2013 notice to all owners and lessees of record located within a five-hundred-foot distance from the Property.

### 5. The CUP Notice of Hearing

45. On or about January 6, 2014, the Maui County Planning Commission scheduled the Application for public hearing on February 11, 2014.

46. On January 7, 2014, the applicant, DLNR, sent a notice of public hearing.  The Planning Department subsequently

7

determined that the notice of public hearing had not been sent to all owners and lessees of record located within a five-hundred-foot distance from the Property.

47. As a result, the Planning Department rescheduled the hearing and required applicant DLNR to send out a new notice of public hearing.

48. On or about February 4, 2014, the Planning Commission scheduled the Application for public hearing on March 25, 2014.

49. On February 12, 2014, DLNR, through its consultant, mailed a second notice of public hearing.

50. The notice of public hearing was mailed to all owners and lessees of record located within a five-hundred-foot distance from the Property.

51. The Planning Department determined that the mailing of the notice of public hearing to all owners and lessees of record located within a five-hundred-foot distance from the Property corrected any deficiency in the mailing of the notice of the application.

52. The notice of public hearing identified the CUP Application, the Property, the right to intervene, where and how to submit written testimony, and the hearing date, time, and place.

53. The notice of hearing stated, in part:

> This hearing is held under the authority of Chapter 92, Hawaii Revised Statues, Title 19 of the Maui County Code and the Maui Planning Commission Rules.
>
> Petitions to intervene shall be in conformity with Sections 12-201-20, 12-201-40, and 12-201-43 of the Rules of Practice and Procedure for the Maui Planning Commission and shall be filed with the Maui Planning Commission and served upon the applicant no less than ten (10) days before the first public hearing date. Filing of all documents to the Maui Planning Commission is c/o the Maui Planning Department, 250 South High Street, Wailuku, Maui, Hawaii 96793.
>
> . . . .

. . . .

55. Persons receiving actual notice of public hearing scheduled for March 25, 2015 [sic] included individuals who would later become members and officers of Plaintiff MLN including:
    a.    Vice-President Manner,
    b.    Member Spencer;
    c.    Treasurer Gannon;
    d.    President David Potter;
    e.    Former President and current Director Tina Hoenig;
    f.    Member Mark Hoenig; and
    g.    Member Neal Sorensen.

56. All of the members and officers of Plaintiff who testified at the hearing admitted that that [sic] they received the notice of hearing, specifically:
   a.   Dr. Manner stated he received the notice of public hearing on February 19, 2014,
   b.   Dr. Spencer, who resides with Dr. Manner, testified that she received the notice of public hearing in February 2014, four to six weeks before the March 25, 2014 hearing,
   c.   Mr. Gannon stated he received the notice of public hearing in February 2014[.]

57. In response to the notice of public hearing, the officers and members who testified for Plaintiff admitted that they neither reviewed the Commission rules nor contacted a lawyer, DLNR representative designated on the notice, or the Planning Department.

. . . .

### 6. The March 25, 2014 Hearing on the CUP Application

. . . .

60. Several future officers, directors, and members of Plaintiff attended the Commission hearing, including former President, and current Director, Ms. Tina Hoenig; Vice-President Manner; member Dr. Spencer; member Mr. Hoenig; and member Mr. Sorensen.

. . . .

62.  Ms. Hoenig testified at the March 25 hearing.

63. At no time prior to or during the March 25, 2014 hearing did any person file a petition to intervene in the CUP proceeding.

64. Because no petition to intervene was made and granted, DLNR was the only party to the proceeding.

65. At the conclusion of the public hearing, the Commission voted unanimously to approve the CUP. . . .

66. Dr. Spencer and Dr. Manner testified that they heard the Commission's decision.

67. At the conclusion of the hearing, the Commission also adopted the Planning Department's Report ("**Planning Department's Report**") and Recommendation (the "**Planning Department's Recommendation**") as its Findings of Fact, Conclusions of Law, and Decision and Order.

. . . .

70. Accordingly, the Commission approved the Application and issued the CUP on March 25, 2014.

. . . .

76. On May 12, 2014, Plaintiff's founding member, future President, and director Tina Hoenig filed a notice of appeal with this Court challenging the CUP pursuant to HRS § 91-14.

. . . .

80. On June 20, 2014, Tina Hoenig and the County of Maui filed a stipulation to dismiss Civil No. 14-1-0315 without prejudice. Plaintiff failed to call Tina Hoenig as a witness during the hearing on this motion and offered no testimony or evidence to explain her reasons for agreeing to the dismissal.

. . . .

81. On July 12, 2014, Plaintiff through its attorney Tom Pierce, Esq. sent a letter to the DLNR demanding that it cease and desist from any development of the Sports Park.

82. In the July 12, 2014 letter, counsel, on behalf of his client, acknowledged that "[o]n March 25, 2014, the Maui Planning Commission grant[ed] a special use permit for the Sports Complex."

83. The Court finds from all credible evidence that Plaintiff knew no later than July 12, 2014 that the Commission had granted a county special use permit for the Sports Park. The Court further finds that Plaintiff failed to file an appeal within 30 days of July 12, 2014.

(Citations to the record omitted.)

## II.  STANDARDS OF REVIEW

### A. Jurisdiction

In reviewing a lower court's application of the exhaustion of administrative remedies doctrine, the Hawaiʻi Supreme Court set out the following standard of review:

> The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

Kellberg v. Yuen, 131 Hawaiʻi 513, 526, 319 P.3d 432, 445 (2014) (citation omitted).

In considering whether primary jurisdiction applies, "[f]irst, it must be determined whether the court had subject matter jurisdiction over [the claims]." Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawaiʻi 257, 272, 318 P.3d 97, 112 (2013). "[A] court's decision to invoke the primary jurisdiction doctrine is reviewed de novo[.]" United Public Workers, AFSCME, Local 646 v. Abercrombie, 133 Hawaiʻi 188, 195, 325 P.3d 600, 607 (2014) (citation omitted). "If the court determines that the

10

primary jurisdiction doctrine applies, the court, in its discretion, may determine whether to stay the litigation or dismiss without prejudice." Id. (citation and internal quotation marks omitted).

Additionally, "review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 240, 842 P.2d 634, 637 (1992) (citation and brackets omitted). However, "the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." Id. (citation and brackets omitted); see also Yamane v. Pohlson, 111 Hawaiʻi 74, 81, 137 P.3d 980, 987 (2006).

### B.  Statutory Interpretation

The parties dispute, in part, whether MLN had a statutory right to file suit in the Circuit Court such that the court had original jurisdiction in this case.  With regard to statutory interpretation:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  A court may also resort to extrinsic aids in determining legislative intent, such as legislative history or the reason and spirit of the law.

Carmichael v. Bd. of Land and Nat. Res., 150 Hawaiʻi 547, 560, 506 P.3d 211, 224 (2022) (citations and internal quotation marks omitted).  Further, "[i]t is also a canon of construction that statutes that are in pari materia may be construed together."

11

Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 450, 420 P.3d 370, 381 (2018) (citation and internal quotation marks omitted).

## C.  Constitutional Law

We review questions of constitutional law "by exercising our own independent constitutional judgment based on the facts of the case." Protect and Pres. Kahoma Ahupuaʻa Ass'n v. Maui Plan. Comm'n, 149 Hawaiʻi 304, 311, 489 P.3d 408, 415 (2021) (citation omitted).  "[Q]uestions of constitutional law are reviewed under the right/wrong standard." Id. (citation omitted).

## III.  DISCUSSION

### A. The Doctrines of Exhaustion of Administrative Remedies and Primary Jurisdiction

In its first point of error, MLN argues the Circuit Court erred in applying the exhaustion of administrative remedies doctrine where the Planning Commission did not have exclusive original jurisdiction over any of MLN's claims.  Specifically, MLN asserts the Circuit Court's conclusion that exhaustion applies whenever claims "could have been" raised in an administrative proceeding, regardless of whether the trial court also had original jurisdiction, is not consistent with the "exclusive original jurisdiction" test.

The Circuit Court's conclusion of law (**COL**) 3 states that "the Court lacks jurisdiction to hear claims that could have been raised in the administrative process, including those claims that could have been raised on appeal pursuant to HRS chapter 91."  (Emphases added.)  COL 3 overlooks the requirement for an agency to have exclusive original jurisdiction in order for the exhaustion of administrative remedies doctrine to apply.  In this respect, MLN is correct that the Circuit Court did not accurately articulate the standard for the exhaustion of administrative remedies doctrine.

"Courts have developed two principal doctrines to enable the question of timing of requests for judicial intervention in the administrative process to be answered[.]"

Kellberg, 131 Hawaiʻi at 527, 319 P.3d at 446 (quoting Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 92-93, 734 P.2d 161, 168 (1987) (**Kona Old**)).  The first doctrine, exhaustion of administrative remedies, "provides that where a claim is cognizable in the first instance by an administrative agency alone, judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process."  Id. (emphasis added) (brackets and internal quotation marks omitted) (quoting Kona Old, 69 Haw. at 93, 734 P.2d at 169).  "The exhaustion principle asks simply that . . . the avenues of relief nearest and simplest should be pursued first. Judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process."  Kona Old, 69 Haw. at 93, 734 P.2d at 169 (citations and internal quotation marks omitted).  "In order for the doctrine to apply, 'the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.'"  Kellberg, 131 Hawaiʻi at 536, 319 P.3d at 455 (brackets, emphasis, and internal quotation marks omitted) (quoting Pele Defense Fund v. Puna Geothermal Venture, 9 Haw. App. 143, 151, 827 P.2d 1149, 1154 (App. 1992)).  Since application of exhaustion requires that the claim be cognizable only before the agency, "the court must first determine whether the agency has exclusive original jurisdiction, in which case, the doctrine of exhaustion would apply.  If not, and the court finds that it does possess jurisdiction over the matter, the court can then decide if it is appropriate to apply the doctrine of primary jurisdiction."  Pac. Lightnet, 131 Hawaiʻi at 269, 318 P.3d at 109 (emphasis added).

The second doctrine, the doctrine of primary jurisdiction, is "conceptually analogous" to the doctrine of exhaustion of administrative remedies.  Id. at 268, 318 P.3d at 108.  "However, it is important to note that unlike the doctrine

of exhaustion, the doctrine of primary jurisdiction <u>does not require a determination that the court lacks jurisdiction over the matter</u>." <u>Id.</u> at 269, 318 P.3d at 109. "Instead, primary jurisdiction presumes that the claim at issue is originally cognizable by <u>both</u> the court <u>and</u> the agency." <u>Id.</u> (emphasis added) (citation omitted). In other words, "under the doctrine of primary jurisdiction, the court and the agency share <u>concurrent</u> jurisdiction over the matter."[8] <u>Id.</u> at 272, 318 P.3d at 112 (emphasis added). If a court's jurisdiction to address an issue or claim is in question, the court decides whether the primary jurisdiction doctrine applies. <u>Id.</u> at 275, 318 P.3d at 115. Under the primary jurisdiction doctrine, if "the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[,]" a court has discretion either to exercise its concurrent jurisdiction, retain jurisdiction but stay the proceeding pending agency resolution of the issues within the agency's special competence, or dismiss the case without prejudice if the parties would not be unfairly disadvantaged. <u>United Pub. Workers</u>, 133 Hawaiʻi at 196-97, 201-02, 325 P.3d at 608-09, 613-14 (citation omitted).

In dismissing Counts I, II, III, IV, V, VI, VIII and IX, the Circuit Court determined that these counts "constitute challenges to the validity of the CUP and its approval." On appeal, MLN does not directly dispute this determination and indeed argues that "the gravamen of MLN's claims is that, in essence, the only way that the intense, urban Sports Complex uses could have been legal was through a change in zoning as opposed to a special use permit." MLN requests that we reverse the FOFs/COL and Order of the Circuit Court:

> with directions to the trial court to: (1) accept jurisdiction over all claims, as there is no legal basis to apply either exhaustion or primary jurisdiction in this case; (2) enter judgment for MLN on Count IX, for lack of adequate notice of the [CUP]; and (3) deem the [CUP] issued on March 25, 2014 by the Planning Commission null and void as matter of law.

---

[8] We note that throughout this opinion we use the terms "concurrent jurisdiction" and "primary jurisdiction" interchangeably when referring to the doctrine of primary jurisdiction.

As to most of the dismissed counts, MLN's arguments address whether the CUP is valid.  However, as to Count V and part of MLN's Count VI claim (based on article XI, section 9 defined by Chapter 343), MLN's allegations in the First Amended Complaint and its arguments on appeal raise issues beyond the validity of the CUP to challenge the adequacy of environmental review documents under HEPA.

### B.  County Zoning and the Special Permit Process

In order for the exhaustion of administrative remedies doctrine to apply, "the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties."  Kellberg, 131 Hawaiʻi at 536, 319 P.3d at 455 (citations, brackets, emphasis, and internal quotation marks omitted).  We conclude that such "clearly defined machinery" was in place related to the issuance of the CUP in this case.[9]

HRS § 46-4 (2012) delegates specified zoning authority to the counties, stating in part:

> **§ 46-4 County zoning.**  (a)  This section and any ordinance, rule, or regulation adopted in accordance with this section shall apply to lands not contained within the forest reserve boundaries as established on January 31, 1957, or as subsequently amended.
>
> Zoning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future development of the county.  Zoning shall be one of the tools available to the county to put the general plan into effect in an orderly manner.  Zoning in the counties of Hawaii, Maui, and Kauai means the establishment of districts of such number, shape, and area, and the adoption of regulations for each district to carry out the purposes of this section.  In establishing or regulating the districts, full consideration shall be given to all available data as to soil classification and physical use capabilities of the land to allow and encourage the most beneficial use of the land

---

[9]  The parties do not dispute the Circuit Court's finding that "[t]he Property is within the State Urban Land Use District and is zoned agricultural under County zoning."  (Emphases added.)  HRS § 205-2(b) (2017) states in pertinent part: "Urban districts shall include activities or uses as provided by ordinances or regulations of the county within which the urban district is situated."  Further, HRS § 205-5(a) (2017) provides that "the powers granted to counties under section 46-4 shall govern the zoning within the districts, other than in conservation districts."  Because the Sports Park is within the state urban district, but is zoned under County ordinance as agricultural, County ordinances governing agricultural zoning districts apply.

consonant with good zoning practices. <u>The zoning power granted herein shall be exercised by ordinance which may relate to</u>:

(1)   The areas within which agriculture, forestry, industry, trade, and business may be conducted;

. . .

(4)   The areas in which particular uses may be subjected to special restrictions;

. . .

<u>The council of any county shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section</u>.  The ordinances may be enforced by appropriate fines and penalties, civil or criminal, or by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances.

. . . .

The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole. . . .

. . . .

(b) <u>Any final order of a zoning agency established under this section may be **appealed to the circuit court** of the circuit in which the land in question is found</u>.  The appeal shall be in accordance with the Hawaii rules of civil procedure.

(Emphases added.)

As specified under the Maui County Code (**MCC**), Title 19 (Zoning), MCC § 19.30A.060 (2013 Supp. No. 38) relates to "Special Uses" in a county agricultural zoning district and provides in pertinent part:

**19.30A.060 - Special uses**.

<u>The following uses and structures shall be permitted in the agricultural district if a special use permit, pursuant to section 19.510.070 of this title, has been obtained</u>; except that if a use described in this section also requires a special permit pursuant to chapter 205, Hawaii Revised Statutes, and if the land area of the subject parcel is fifteen acres or less, the state special permit shall fulfill the requirements of this section:

. . .

H.    Open land recreation uses, structures or facilities which do not meet the criteria of

16

subsection 19.30A.050.B.11,[10] including commercial camping, gun or firing ranges, archery ranges, skeet shooting, paint ball, bungee jumping, skateboarding, roller blading, playing fields, accessory buildings and structures. Certain open land recreation uses or structures may also be required to obtain a special permit pursuant to chapter 205, Hawaii Revised Statutes. The following uses or structures shall be prohibited: airports, heliports, drive-in theaters, country clubs, drag strips, motor sports facilities, golf courses and golf driving ranges[.]

(Emphases added.)

The criteria for special use permits is explicitly set out in the MCC. The applicable provision provides, in relevant part:

**19.510.070 - Special use permits.**

A.  Compliance Required. A special use permit shall comply with the provisions of this section and with the policies and objectives of the general plan and community plans of the county, the Hawaii Revised Statutes, and the revised charter of the county.

B.  Criteria for Permit. Subject to the provisions of this chapter, the appropriate planning commission shall review and, after a public hearing, may approve a request for a special use if the commission finds that each of the following criteria have been met:

1.  The proposed request meets the intent of the general plan and the objectives and policies of the applicable community plan of the county;

---

[10] MCC § 19.30A.050.B.11 (2013 Supp. No. 38) sets out permitted "accessory uses" in agricultural zoning districts pertaining to "Open land recreation" as follows:

11.  Open land recreation as follows: hiking; noncommercial camping; fishing; hunting; equestrian activities; rodeo arenas; arboretums; greenways; botanical gardens; guided tours that are accessory to principal uses, such as farm or plantation tours, petting zoos, and garden tours; hang gliding; paragliding; mountain biking; and accessory restroom facilities. If hiking, fishing, hunting, equestrian activities, rodeo arenas, hang gliding, paragliding, or mountain biking are conducted for commercial purposes on the island of Moloka'i, such uses shall have been approved by the Moloka'i planning commission as conforming to the intent of this chapter. Open land recreation uses or structures not specifically permitted by this subsection or by subsection 19.30A.060.H shall be prohibited; certain open land recreation uses or structures may also be required to obtain a special permit pursuant to chapter 205, Hawai'i Revised Statutes[.]

> 2. The proposed request is consistent with the applicable <u>community plan land use map</u> of the county;
>
> 3. The proposed request meets the intent and purpose of the <u>applicable district</u>;
>
> 4. The proposed development will not adversely affect or interfere with public or private schools, parks, playgrounds, water systems, sewage and solid waste disposal, drainage, roadway and transportation systems, or other public requirements, conveniences, and improvements;
>
> 5. The proposed development will not adversely impact the social, cultural, economic, environmental, and ecological character and quality of the area;
>
> 6. That the public shall be protected from the deleterious effects of the proposed use;
>
> 7. That the need for public service demands created by the proposed use shall be fulfilled; and
>
> 8. If the use is located in the state agricultural and rural district, the commission shall review whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State.

MCC § 19.510.070 (2013 Supp. No. 38) (emphases added).

The Hawaiʻi Supreme Court has explained that,

> [u]nlike a district boundary amendment, which is analogous to a rezoning in its effect of reclassifying land, and unlike a variance, which permits a landowner to use his property in a manner forbidden by ordinance or statute, a special permit allows the owner to put his land to a use expressly permitted by ordinance or statute on proof that certain facts and conditions exist, without altering the underlying zoning classification.

<u>Neighborhood Bd. No. 24 (Waianae Coast) v. State Land Use Comm'n</u>, 64 Haw. 265, 270–71, 639 P.2d 1097, 1102 (1982) (**Waianae Coast**).

The Maui Planning Commission Rules of Practice and Procedure (**MPC Rules**) authorize petitions to intervene in Planning Commission proceedings. MPC Rules § 12-201-39 (1993) provides:

> <u>Petition to intervene.</u> All proceedings in which action by the commission will result in a final determination of the legal rights, duties or privileges of a specific party or parties, and which is appealable pursuant to section 91-14, HRS, as amended, is a contested case. <u>Petitions to intervene in such proceedings may be filed in accordance with the provisions of this subchapter</u>.

18

(Emphasis added.)  Accordingly, the MPC Rules permit intervenors to become parties to such a proceeding and provides:

> All persons who have a property interest in land subject to commission action, who lawfully reside on said land, or can demonstrate they will be so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public shall be admitted as parties upon timely application for intervention.

MPC Rules § 12-201-41(b) (2010).  The MPC Rules also provide, in pertinent part:

> <u>Petition filing.</u> (a) Petitions to intervene shall be in conformity with section 12-201-20 herein and shall be filed with the commission and served upon the applicant no less than ten days before the first public hearing date. Untimely petitions will not be permitted except for good cause, but in no event will intervention be permitted after the commission has taken the final vote on the matter before it.

MPC Rules § 12-201-40 (2001).

Post-hearing procedures expressly provide for appeals. "Parties to proceedings before the commission may obtain judicial review of decisions and orders issued by the commission in the manner set forth in chapter 91-14, Hawaii Revised Statutes."  MPC Rules § 12-201-85 (1993).  In turn, HRS § 91-14(a) and (b) (2012) authorize appeals to the circuit court within thirty days.[11]

In the context of this case, the foregoing constitutes "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties."  <u>Kellberg</u>, 131 Hawaiʻi at 536, 319 P.3d at 455 (emphasis and citations omitted).

Here, it is undisputed that no MLN member petitioned to intervene in the CUP proceedings before the Planning Commission, as allowed under the MCC and MPC Rules.[12]  Further, the Circuit Court found – and it is unchallenged – that "by no later than May 12, 2014, [MLN Director, Tina Hoenig,] had received a copy of the CUP approval letter[,]" and MLN members "knew no later than July 12, 2014 that the Commission had granted a county special use

---

[11]  HRS § 91-14(b) provides, in relevant part, "proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court[.]"

[12]  As addressed *infra*, we conclude that MLN members had proper notice of the application for the CUP.

19

permit for the Sports Park[,]" but that "[MLN] failed to file an appeal within 30 days of July 12, 2014." Rather than intervening in the Planning Commission's proceedings to challenge the issuance of the CUP, from which MLN members could have appealed for judicial review under HRS § 91-14, MLN instead subsequently filed this direct action in the Circuit Court on September 2, 2014.

### C. Failure to Exhaust Administrative Remedies Bars Counts I, II, III, IV, VIII and IX

#### 1. Count I: Alleged Zoning Violations

In Count I of the First Amended Complaint, MLN asserts that DLNR's intended uses for the Sports Park violate zoning pursuant to HRS § 46-4 and the MCC in the following ways: Count I.B., they are inconsistent with the Wailuku-Kahului Community Plan designation; Count I.C., they are inconsistent with the Maui Island Plan; Count I.D., they violate MCC Chapter 19.30A (Agricultural district); Count I.E., they violate MCC § 19.510.070 (Special use permits); and Count I.F., they violate the June 21, 2012 LUC Decision and Order (**D&O**) obtained by A&B to reclassify, under certain conditions, 545 acres of land to State Urban Land Use District.[13]

MLN argues that under Pavsek, the Circuit Court has original jurisdiction over claims brought under HRS § 46-4(a) because MLN is comprised of real estate owners who may sue to enforce zoning ordinances without exhausting administrative remedies. Pavsek v. Sandvold, 127 Hawaiʻi 390, 279 P.3d 55 (App. 2012), *abrogated on other grounds by* Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 428 P.3d 761 (2018).

HRS § 46-4 provides the counties with specified zoning authority, and also includes provisions related to enforcing zoning ordinances. MLN's argument is based on the following

---

[13] Count I.A. contained general allegations common to the Count I claims related to zoning. As to Count I.F., the Circuit Court temporarily stayed this case pending resolution of MLN's already-filed petition with the LUC and deferred to the LUC for a determination of any potential violation of the LUC's June 21, 2012 D&O. The parties subsequently advised the Circuit Court that the LUC had denied MLN's petition.

paragraph in HRS § 46-4(a):

> The council of any county <u>shall</u> prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary <u>to enforce this section and any ordinance enacted in accordance with this section</u>. The ordinances <u>may be enforced</u> by appropriate fines and penalties, civil or criminal, or by court order <u>at the suit of</u> the county or <u>the owner or owners of real estate directly affected by the ordinances</u>.

(Emphases added.) HRS § 46-4(a) thus provides that county councils <u>shall</u> establish rules, regulations and procedures for enforcing the statute and zoning ordinances, and also provides that owners directly affected by zoning ordinances <u>may</u> bring suit to enforce such ordinances.

The CUP in this case was subject to an established administrative process. HRS § 46-4 delegates zoning authority to the counties. Here, the MCC provided the criteria for a special permit under MCC § 19.510.070, and sets out certain special uses allowed under MCC § 19.30A.060 if a special use permit is obtained. The MPC Rules allow for petitions to intervene, and expressly provide for appeals from the Planning Commission's decisions under HRS § 91-14. <u>See</u> MPC § 12-201-85. HRS § 46-4(b) also authorizes appeals from final orders of a zoning agency.

In determining whether the exhaustion of administrative remedies doctrine applies to Count I, the question is whether HRS § 46-4(a) provides concurrent jurisdiction to the Circuit Court under the circumstances of this case. In short, MLN members assert under <u>Pavsek</u> that they can bypass the administrative process established under HRS § 46-4, HRS § 205-6, the MCC and the MPC Rules, and instead, bring suit under HRS § 46-4(a) after the CUP was issued and seek to invalidate it.

Our foremost obligation in construing HRS § 46-4(a) is to ascertain and give effect to the legislative intent, and to start with the language of the statute itself. <u>Carmichael</u>, 150 Hawaiʻi at 560, 506 P.3d at 224. We conclude the relevant paragraph in HRS § 46-4(a) is ambiguous as to whether it conferred concurrent jurisdiction on the Circuit Court under the circumstances of this case. In other words, the pertinent language is ambiguous as to whether an "owner or owners of real

21

estate directly affected by [an ordinance]" could bypass the administrative process prescribed by a county for zoning issues, and instead, file a lawsuit after the prescribed agency proceeding is completed and seek to invalidate a permit issued in the agency proceeding.  Given this ambiguity, we first note the parties do not point to any pertinent legislative history and we find none.

We thus examine the context surrounding the relevant language in the statute.  HRS § 46-4 is contained within Part I of HRS Chapter 46, addressing the "General Jurisdiction and Powers" of the counties, and HRS § 46-4 delegates extensive authority to the counties related to zoning.  The same paragraph in HRS § 46-4(a), under which MLN members assert the right to bring suit, first requires that county councils "shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section."  Further, HRS § 46-4(a) also expressly provides that:

> The powers granted herein <u>shall be liberally construed in favor of the county exercising them</u>, and in such a manner as to <u>promote the orderly development of each county or city and county</u> in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole. . . .

(Emphasis added.)  This context provides guidance to our analysis.  <u>See</u> <u>Omiya</u>, 142 Hawaiʻi at 450, 420 P.3d at 381 (explaining that it is well established that statutes *in pari materia* should be construed together).

As the State and A&B point out, MLN's construction of HRS § 46-4(a) would lead to a disorderly situation where parties could completely ignore administrative proceedings on whether a special use permit should be issued, ignore requirements to appeal for judicial review through an established administrative review process and HRS § 91-14, and instead, separately file a lawsuit at an indeterminate time and bring claims challenging uses to land that had already been authorized through the special permitting process.

We conclude <u>Pavsek</u> is distinguishable from this case. The plaintiffs in <u>Pavsek</u> brought suit in the circuit court against, *inter alia*, the owners of three residential properties and alleged the properties were being used for short-term rentals in violation of land use ordinances. 127 Hawaiʻi at 392-93, 279 P.3d at 57-58. In <u>Pavsek</u>, there had been no administrative proceedings, there was alleged <u>non-permitted</u> activity, and this court held that plaintiffs - who lived on the same street as the subject properties - had a private right of action under HRS § 46-4(a) to seek enforcement of a county ordinance. <u>Id.</u> at 398-400, 279 P.3d at 64-65. However, this court also held that adjudicating the plaintiffs' claims required resolution of whether the defendants had violated land use ordinances, an issue within the special competence of city agencies, and thus under the primary jurisdiction doctrine, the plaintiffs were required to petition the city agencies for a determination of the alleged land use violations before proceeding with their lawsuit. <u>Id.</u> at 400-01, 279 P.3d at 65-66.

Here, unlike the plaintiffs in <u>Pavsek</u>, MLN challenges land use that has been <u>permitted</u> under the CUP, where MLN members had notice of the administrative proceedings, some of its members actively participated in the administrative proceedings but did not intervene, and where no appeal was pursued regarding the final administrative decision to issue the CUP.

In <u>Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.</u>, 962 N.E.2d 956 (Ill. 2012), the Illinois Supreme Court read a statute *in pari materia* that provided both a right to appeal in an administrative appeal process <u>and</u> a citizens suit provision. In considering whether the plaintiffs could bring a citizens suit to challenge a mining permit, when plaintiffs had failed to appeal the final administrative decision on the permit to the circuit court, the Illinois Supreme Court held that the administrative review process was the <u>exclusive</u> route for circuit court review. <u>Id.</u> at 963-65. The court noted, however, that "an action to compel compliance with the Mining Act for <u>nonpermitted</u> activity, or to enforce compliance with the terms of a permit,

may be brought by way of an original action in the circuit court[.]"  Id. at 965.

The Illinois Supreme Court explained that:

> Plaintiff's construction of section 8.10[14] would eviscerate and render meaningless the "shall" provision contained in the first clause of the statute by making adherence to the Administrative Review Law entirely optional and nonbinding in the case of a final permit determination by [the Illinois Department of Natural Resources (**IDNR**)].  This interpretation would be inconsistent with the Administrative Review Law, which specifically requires prompt judicial review of such final administrative decisions.

Id.  The court further explained:

> Plaintiff's suggested construction of the statute would require the circuit court to determine such highly regulated mining operation and reclamation issues without an administrative record to review.  A contrary construction of the statute would also impact legitimate reliance by a permittee, and create significant uncertainty by allowing the terms of a permit to be reopened and reconsidered at any time, even years after a reclamation project has been completed in accordance with a permit.  We decline to conclude that the legislature intended such an absurd result in enacting section 8.05(a),[15] which would not only call

---

[14]  Section 8.10 (West 2008) of the Mining Act at issue in Citizens Opposing Pollution provided:

> Review under Administrative Review Law.  All final administrative decisions of the Department under this Act shall be subject to judicial review pursuant to the Administrative Review Law, as amended, and the rules adopted under it, except that the remedies created by this Act are not excluded or impaired by any provision of the Administrative Review Law.

962 N.E.2d at 964.

[15]  As set forth in Citizens Opposing Pollution:

> Section 8.05(a) [(West 2008)] of the Mining Act contains the citizen suit provision relied upon by plaintiff.  It states as follows:
>
> > "Civil Actions. (a) Any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this Act against any governmental instrumentality or agency which is alleged to be in violation of the provisions of this Act or of any rule, order or permit issued under this Act, or against any other person who is alleged to be in violation of this Act or of any rule, order or permit issued under this Act. No action may be commenced under this subsection (1) prior to 60 days after the plaintiff has given notice in writing of the alleged violation to the Department and to any alleged violator,

(continued...)

24

> into question the finality of mining permit decisions
> throughout Illinois, but would undermine the role of IDNR in
> the permit process.

Id. at 966 (citation omitted). Thus, in that case, where a permit had been issued and no administrative appeal was taken, the Illinois Supreme Court held that the trial court had properly dismissed the action with prejudice. Id. at 962, 968.

In this case, HRS § 46-4(a) provides that county councils <u>shall</u> establish rules, regulations and procedures for enforcing zoning ordinances, while also providing that owners of real estate directly affected by zoning ordinances <u>may</u> enforce zoning ordinances in court lawsuits. Further, HRS § 46-4(b) provides for judicial review from "[a]ny final order of a zoning agency established under this section[.]" Importantly, the legislature also expressly stated in HRS § 46-4(a) that the powers granted in that statute "shall be <u>liberally construed in favor of the county exercising them</u>, and in such a manner as to promote the <u>orderly development of each county or city and county</u> in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole." (Emphases added.) If we adopted MLN's position, the administrative process that HRS § 46-4(a) mandates the counties to prescribe would be undermined and could be completely ignored in favor of court action to invalidate a permit. Further, under MLN's position, a court challenge to a permit could be filed at an indeterminate time after the permit had been issued, which would create great uncertainty rather than "promote the orderly development" of the county. See HRS § 46-4(a).

Reading the relevant provisions of HRS § 46-4 *in pari materia*, and under the circumstances in this case, we construe the legislative intent as requiring the administrative review

---

[15](...continued)
> or (2) if the State has commenced and is
> diligently prosecuting a civil action to require
> compliance with the provisions of this Act, or
> any rule, order or permit issued under this
> Act." 225 ILCS 720/8.05(a) (West 2008).

962 N.E.2d at 964.

process and appeal from the administrative process as the
<u>exclusive</u> route for obtaining court review of the activity
permitted under the CUP.  <u>Pavsek</u> is distinguishable because in
that case the plaintiffs challenged conduct that had not been
permitted under any administrative process.

Accordingly, the exhaustion of administrative remedies
doctrine applied to MLN's claims under HRS § 46-4 in Count I, and
MLN failed to exhaust its administrative remedies.

## 2. Counts II and IV: Declaratory Relief under HRS § 632-1

In Counts II and IV, MLN sought declaratory relief via
a determination that the CUP is void as a matter of law because
the intended uses at the Sports Park are not expressly permitted
by ordinance and violate the MCC and also that the Sports Park
does not qualify as a "regional park" under the MCC.  MLN argues
the Circuit Court has original jurisdiction over these claims
under the declaratory relief statute, HRS § 632-1 (2016), and
that the statute confers broad authority on the Circuit Court to
hear these claims.

HRS § 632-1 generally allows for declaratory relief in
civil cases.  <u>Travelers Ins. Co. v. Hawaii Roofing, Inc.</u>, 64 Haw.
380, 386, 641 P.2d 1333, 1337 (1982).  However, HRS § 632-1(b)
provides that "[w]here . . . a statute provides a special form of
remedy for a specific type of case, <u>that statutory remedy shall
be followed</u>[.]" (Emphasis added.)  Thus, "where such a statutory
remedy exists, declaratory judgment does not lie." <u>Punohu v.
Sunn</u>, 66 Haw. 485, 487, 666 P.2d 1133, 1134 (1983) (citation
omitted).

In <u>Punohu</u>, plaintiffs initiated a declaratory relief
action in circuit court, seeking declaratory judgment that a
notice about reductions to their public assistance benefits
violated federal law and constitutional due process requirements.
<u>Id.</u> at 486, 666 P.2d at 1134.  Previously, administrative
hearings had been held regarding the notice, in which the
reductions in benefits were upheld.  <u>Id.</u>  The Hawaiʻi Supreme
Court rejected plaintiffs' claim for declaratory relief because
an appeal under HRS § 91-14 was available from the underlying

agency decision, in which the plaintiffs could have raised their statutory and constitutional claims. Id. at 487, 666 P.2d at 1135. The Hawaiʻi Supreme Court stated:

> the [administrative] hearing was a "contested case" under the provisions of § 91-1(5), HRS, and as such, was reviewable only in accordance with the provisions of § 91-14, HRS. Since the scope of review vested in the circuit court in an appeal pursuant to § 91-14, HRS, is much more limited than the court's plenary authority in an original action commenced before it, it would be anomalous to permit a declaratory judgment action to be substituted for an appeal from an agency determination in a contested case. Accordingly, we hold that the remedy of appeal provided by § 91-14, HRS, is a statutorily provided special form of remedy for the specific type of case involved here and that a declaratory judgment action, pursuant to § 632-1, HRS, did not lie.

Id. (emphasis added). Thus, because HRS § 632-1 declaratory relief was unavailable to the plaintiffs, the Hawaiʻi Supreme Court instructed that the case be dismissed.[16] Id. at 487-88, 666 P.2d at 1135.

Here, the Circuit Court's reliance on, *inter alia*, Punohu was proper. Under HRS § 46-4(a), the county councils were required to prescribe rules, regulations, and procedures to enforce zoning. Under the MCC, MLN members could have intervened in the Planning Commission hearing, and pursuant to HRS § 91-14, MLN members could have appealed the issuance of the CUP. Thus, HRS §§ 46-4(a) and 91-14 provide a special form of remedy for the claims that MLN raises in Counts II and IV. The failure of MLN members to intervene in the Planning Commission proceeding and appeal from the issuance of the CUP under HRS § 91-14 precludes declaratory relief under HRS § 632-1.

Thus, the Circuit Court did not have jurisdiction under HRS § 632-1 and did not err in dismissing Counts II and IV for failure to exhaust administrative remedies.

---

[16] MLN cites County of Kauaʻi v. Office of Information Practices, State of Hawaiʻi, 120 Hawaiʻi 34, 200 P.3d 403 (App. 2009) to assert the Circuit Court's reliance on Punohu was misplaced. However, it is County of Kauaʻi that is inapplicable because the relevant statute in that case, HRS § 92-12, expressly permitted an original action in the circuit court, as opposed to Punohu and other cases that concerned appeals of agency decisions. Id. at 44, 200 P.3d at 413.

### 3. Counts III and VIII: Due Process Claims

In Counts III and VIII, MLN alleges violations to due process rights under article I, section 5 of the Hawaiʻi Constitution.

In Count III, MLN alleges the special use ordinance, MCC § 19.30A.060(H), is unconstitutionally vague and ambiguous because the language "playing fields, accessory buildings and structures" fails to give the public notice of the intensity of uses that may be permitted by the Planning Commission, thus violating article I, section 5.

In Count VIII, MLN asserts a due process violation because "the expedited special use process improperly avoids the more thorough change in zoning process[,]" that DLNR was required to seek amendments to the Wailuku-Kahului Community Plan and the Maui Island Plan and a change in zoning from the Maui County Council (**County Council**), that MLN members are property owners in proximity to the Sports Park and have a property interest, and that they were denied meaningful hearings before the County Council.

MLN does not dispute the Circuit Court's ruling that its constitutional claims could have been raised in the CUP administrative proceeding and in an HRS § 91-14 appeal. See Punohu, 66 Haw. at 486-87, 666 P.2d at 1134-35 (holding constitutional due process claims were precluded in a declaratory relief action because they could have been raised in an HRS § 91-14 appeal from the agency decision); HRS § 91-14(g).[17]  As MLN

---

[17]  HRS § 91-14(g) (2012) provides,

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)  In violation of constitutional or statutory provisions; or
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
> (3)  Made upon unlawful procedure; or
> (4)  Affected by other error of law; or
> (5)  Clearly erroneous in view of the reliable,

(continued...)

correctly points out, however, the pertinent question is whether the Planning Commission had <u>exclusive</u> original jurisdiction with respect to these asserted due process claims or whether the Circuit Court had <u>concurrent</u> jurisdiction over these claims.

As a general matter, claims based on constitutional rights are subject to the exhaustion of administrative remedies doctrine, unless an exception applies. <u>Kellberg</u>, 131 Hawai'i at 519, 531, 319 P.3d at 438, 450.[18]

In <u>Kellberg</u>, the case arose out of a planning director's approval of a subdivision in the County of Hawai'i and where the plaintiff was an adjacent landowner. 131 Hawai'i at 515, 319 P.3d at 434. The plaintiff did not appeal from a final decision by the planning director and instead filed a complaint in circuit court alleging, *inter alia*, due process violations.

---

[17](...continued)

> probative, and substantial evidence on the whole record; or
>
> (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Emphasis added.)

[18]   <u>See</u> <u>In re J.R. Simplot Co.</u>, 640 F.2d 1134, 1137 (9th Cir. 1981), <u>cert. denied</u>, 455 U.S. 939 (1982) (holding that although the Occupational Safety and Health Review Commission refused to address constitutional claims during Occupational Safety and Health Administration proceedings, the applicable statutory review procedure adequately assured judicial review of any alleged constitutional violation, and thus, because the review procedure provided an adequate remedy and contemplated exhaustion of administrative remedies, the plaintiff had improperly sought relief directly in the federal district court); <u>see also</u> <u>RBG Bush Planes, LLC v. Kirk</u>, 340 P.3d 1056, 1061 (Alaska 2015) (holding that party was required to exhaust administrative remedies with respect to state constitutional claims before seeking judicial intervention); <u>Salt Lake City Mission v. Salt Lake City</u>, 184 P.3d 599, 602-03 (Utah 2008) (concluding that plaintiff that failed to appeal from planning commission decision denying a conditional use permit failed to exhaust its administrative remedies and its claims under the state constitution were properly dismissed); <u>Luck Bros., Inc. v. Agency of Transp.</u>, 99 A.3d 997, 999-1001, 1003-04 (Vt. 2014) (noting exhaustion of administrative remedies is often required even when a party asserts constitutional challenges to administrative proceedings and concluding plaintiff's claims asserting a property interest and a due process challenge to agency's process was subject to exhaustion of administrative remedies); <u>Farm Bureau Town & Country Ins. Co. of Missouri v. Angoff</u>, 909 S.W.2d 348, 352-53 (Mo. 1995) (en banc) (holding that constitutional claims, that statutes violated due process for vagueness and also appropriated property without due process, could be preserved and raised during judicial review of administrative proceeding, and plaintiff was required to exhaust administrative remedies); 2 Am. Jur. 2d Administrative Law § 455, Westlaw (database updated Oct. 2023) ("[t]he exhaustion requirement is not rendered inoperable solely by the fact that a party applying for judicial relief urges that there has been a violation of constitutional rights.").

Id. at 519, 319 P.3d at 438. The due process claim asserted that the plaintiff had a property interest related to the subdivision as an adjacent landowner, that the County defendants had approved the subdivision "without correcting patent defects" and without providing any notice or due process to him, and that the subdivision approval violated his right to due process under the U.S. Constitution and article I, section 5 of the Hawaiʻi Constitution. Id. In the circuit court and subsequently on appeal, the parties litigated whether the case should be dismissed for plaintiff's failure to exhaust administrative remedies. Id. at 520, 527-34, 319 P.3d at 439, 446-53. Notwithstanding the constitutional due process claims asserted by plaintiff, the Hawaiʻi Supreme Court expressed that "generally the doctrine of exhaustion of remedies requires an aggrieved party to exhaust administrative remedies before seeking judicial review." Id. at 531, 319 P.3d at 450 (citation omitted). In other words, there was no indication that the exhaustion of administrative remedies doctrine did not apply to the asserted constitutional due process claims. The court further noted, however, that "an aggrieved party need not exhaust administrative remedies where no effective remedies exist[,]" and that "whenever exhaustion of administrative remedies will be futile it is not required." Id. (citations, brackets, and internal quotation marks omitted). Analyzing the particular circumstances of that case, the court held the plaintiff did not have an effective administrative remedy because he was not made aware of the relevant administrative decision until after the time to appeal had ended. Id. at 531-34, 319 P.3d at 450-53.

"Failure to exhaust remedies is not an absolute bar to judicial consideration and must be applied in each case with an understanding of its purposes and of the particular administrative scheme involved." 2 Am. Jur. 2d Administrative Law § 454, Westlaw (database updated Oct. 2023); see Kellberg, 131 Hawaiʻi at 531, 319 P.3d at 450. In addition to futility, excusing exhaustion of remedies may also occur when "the plaintiff raises a substantial constitutional question which

30

could not be resolved through the administrative process." 2 Am. Jur. 2d Administrative Law § 454 (footnote omitted). "However, the exhaustion requirement is not rendered inoperable solely by the fact that a party applying for judicial relief urges that there has been a violation of constitutional rights." Id. at § 455.

Here, MLN does not contest the Circuit Court's findings that: on February 12, 2014, a "notice of public hearing was mailed to all owners and lessees of record located within a five-hundred-foot distance from the Property" (FOF 49-50); "[p]ersons receiving actual notice of public hearing scheduled for March 25, [2014,[19]] included individuals who would later become members and officers of Plaintiff MLN" including Vice-President Harley Manner, Member Mary Spencer, Treasurer Holden Gannon, President David Potter, former president and current Director Tina Hoenig, member Mark Hoenig, and member Neal Sorensen (FOF 55); five future officers or members of MLN attended the March 25, 2014 hearing - Tina Hoenig, Dr. Manner, Dr. Spencer, Mr. Hoenig, and Mr. Sorensen (FOF 60); Tina Hoenig testified at the March 25, 2014 hearing (FOF 62); Dr. Manner, who would later become MLN's Vice-President, and Dr. Spencer heard the Planning Commission's decision at the end of the March 25, 2014 hearing (FOF 66); and "[a]t no time prior to or during the March 25, 2014 hearing did any person file a petition to intervene in the CUP proceeding [(FOF 63)]." Further, Dr. Spencer testified during the December 22, 2014 evidentiary hearing before the Circuit Court that she testified at the March 25, 2014 hearing on the CUP application.

Thus, at least seven individuals who would become an MLN member, director, or officer received notice of the public hearing scheduled for March 25, 2014, five of them attended the March 25, 2014 hearing, and two of them – Tina Hoenig and Mary Spencer – actively participated in that hearing by testifying. No one sought to intervene. Given their participation by

---

[19] The Circuit Court's FOF 55 has a typographical error stating the public hearing was on March 25, 2015.

testifying in the Planning Commission hearing, Tina Hoenig and Spencer could have appealed from the Planning Commission's decision to issue the CUP. See In re Hawaiʻi Elec. Light Co., 145 Hawaiʻi 1, 22, 445 P.3d 673, 694 (2019) ("Although an aggrieved person must have participated in a contested case in order to invoke judicial intervention, we have not 'conditioned standing to appeal from an administrative decision upon formal intervention in the agency proceeding.'") (citation omitted); see also Life of the Land, Inc. v. Land Use Comm'n, 61 Haw. 3, 9, 594 P.2d 1079, 1083 (1979) (holding that Life of the Land had standing to appeal from Land Use Commission's decision where its representative submitted written comments to, and testified at public hearing before, the commission).

On May 12, 2014, Tina Hoenig - MLN's founding member, future president, and director – filed a notice of appeal pursuant to HRS § 91-14 in the Circuit Court, docketed as Civil No. 14-1-0315, challenging the CUP (FOF 76-77). However, a little more than a month later, on June 20, 2014, Ms. Hoenig and the County of Maui filed a stipulation to dismiss Civil No. 14-1-0315 without prejudice (FOF 80). In this case, Ms. Hoenig was not called as a witness in the evidentiary hearing addressing the motion to dismiss and thus offered no evidence to explain her reasons for agreeing to dismiss Civil No. 14-1-0315 (FOF 80). In short, the only attempt to appeal from the Planning Commission's decision to issue the CUP was dismissed shortly after it was filed.

As discussed earlier, the statutes, ordinances and regulations related to issuance of the CUP established "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." Kellberg, 131 Hawaiʻi at 536, 319 P.3d at 455 (emphasis and citation omitted). Here, the agency procedure and the right to appeal the agency decision provided an adequate remedy to address MLN's claims in Count III and VIII. Unlike in Kellberg, individuals who would later become officers, directors, and members of MLN were well aware of the Planning Commission's hearing on the CUP, some attending and two

testifying, and at least two of these individuals heard the Planning Commission's decision at the end of the March 25, 2014 hearing. Given these circumstances, the exhaustion of administrative remedies doctrine applied to MLN's claims in Counts III and VIII.[20]

MLN further contends, however, that where there are constitutional claims based on the effect of an agency decision, as opposed to the substance of the decision, the exhaustion of administrative remedies doctrine is not implicated, citing Leone v. County of Maui, 128 Hawaiʻi 183, 192, 284 P.3d 956, 965 (App. 2012). MLN's argument is misplaced because Leone involved regulatory takings claims and is distinguishable from this case. In Leone, appellants owned properties zoned "Hotel-Multifamily," which permitted "a variety of economically beneficial uses, including single-family residences." Id. at 187, 284 P.3d at 960. However, the parcels were designated "park" in the 1998 Kihei–Makena Community Plan which did not permit the construction of single-family residences. Id. The parcels were also located in a special management area, under the Coastal Zone Management Act (**CZMA**), which imposed stringent permit requirements for certain developments within special management areas. Id.

The appellants sought to construct single-family homes on their properties, a process was initiated for changing the community plan designation from "park" to "residential," but "[s]everal commissioners advocated for prolonging the amendment process as a deliberate strategy to preserve the status quo–a de facto beach park on the privately-owned lots." Id. at 188, 284 P.3d at 961. Appellants also filed assessment applications seeking a determination that their proposed use was exempt from the special management area permit requirements, but the Director of the Department of Planning of the County of Maui rejected the applications because, *inter alia*, "the proposed use was inconsistent with the properties' 'park' designation in the Community Plan." Id.

---

[20] We address *infra* MLN's claim that the futility exception applies.

Thereafter, without exhausting administrative remedies or appealing the director's decision to the planning commission, the appellants filed inverse condemnation claims in the circuit court. Id. at 188-89, 284 P.3d at 961-62. Their circuit court action claimed that Maui County had engaged in regulatory takings by depriving their properties of any economially viable use and asserted equal protection and substantive due process violations. Id. at 188-89, 284 P.3d at 961-62. Within the context of a regulatory takings case, this court held that "where landowners do not challenge the substance of the decision of the land-use authority, but instead raise constitutional claims based on the effect of the decision, the doctrines of exhaustion and primary jurisdiction are not implicated." Id. at 192, 284 P.3d at 965 (emphases added). As noted in Leone, a "regulatory taking" requires just compensation, and the appellants' contention in Leone was that "in denying them the opportunity to build a single-family residence, Maui County has deprived them of all economically beneficial use of their property." Id. at 190, 284 P.3d at 963.

In the instant case, MLN does not assert a regulatory takings claim. Instead, Counts III and VIII assert the CUP issued by the Planning Commission is invalid. MLN's opening brief argues that "to the extent the Planning Commission has acted illegally and ultra vires in issuing the [C]UP, the [C]UP is null and void as a matter of law." Hence, MLN's claims are based on the substance and not the effect of the Planning Commission's decision. Leone does not preclude application of the exhaustion of administrative remedies doctrine in this case.

MLN also cites Waianae Coast, 64 Haw. 265, 639 P.2d 1097, to argue that its members' due process rights were violated because the CUP essentially effectuated a change in zoning without going through a rezoning process. However, MLN fails to explain how Waianae Coast is relevant to whether the Circuit Court had concurrent jurisdiction in this case to address MLN's due process claims. Waianae Coast does not address the exhaustion of administrative remedies doctrine or the primary

34

jurisdiction doctrine.[21]  Therefore, MLN's reliance on Waianae
Coast is misplaced.

Given that Counts III and VIII present claims
challenging the validity of the CUP, there was an established
regulatory process for MLN members to intervene in the Planning
Commission proceeding and to seek judicial review by appealing
under HRS § 91-14.  Under these circumstances, the Circuit Court
did not have concurrent jurisdiction and did not err in
dismissing the due process claims in Counts III and VIII for
failure to exhaust administrative remedies.

### 4.  Count IX: Claim Based on Lack of Notice

In Count IX of the First Amended Complaint, MLN seeks
declaratory and other relief for DLNR's alleged failure to
provide adequate notice of its CUP application as required by MCC
§ 19.510.010(E) (2013 Supp. No. 38),[22] which deprived MLN
homeowners of the opportunity to be informed of the Planning
Department's decision to require the developer to apply for a
CUP, rather than engage in the comprehensive change in zoning
process.  We address MLN's claim to the extent that in Kellberg,
the Hawai'i Supreme Court held that the exhaustion of
administrative remedies doctrine may be excused based on a lack
of notice in certain circumstances.  131 Hawai'i at 532-33, 319
P.3d at 451-52.

In Kellberg, the relevant county code at the time did
not require any notice to adjoining property owners of pending

---

[21]  In Waianae Coast, the appellants had filed a petition with the LUC
requesting intervention and a contested case hearing, which the LUC denied.
Id. at 267, 639 P.2d at 1100.  Appellants then challenged the LUC's decision
in the circuit court.  Id. at 268, 639 P.2d at 1100.

[22]  MCC § 19.510.010 requires, in pertinent part:

> 19.510.010 - General application procedures.
>
> . . . .
>
> E.    At the time of the filing of the application, the
>       applicant shall file a notice of application, which is
>       in a form prescribed by the planning director, and an
>       affidavit certifying that the notice of application was
>       mailed to all owners and lessees of record located
>       within a five-hundred-foot distance from the subject
>       parcel.

subdivision applications or final approval of applications by the planning director.  Id. at 532, 319 P.3d at 451.  By the time the plaintiff learned of a final subdivision approval by the planning director, the time for appeal to the county board of appeals had already passed.  Id. at 532-33, 319 P.3d at 451-52.  The Hawai‘i Supreme Court did not expressly state that the futility exception applied in Kellberg, but the supreme court nevertheless excused application of the exhaustion of administrative remedies doctrine where the plaintiff had no opportunity to receive notice of the pending subdivision application or planning director's final approval because the county code and county board of appeals rules did not require such notice, and the plaintiff had no meaningful opportunity to timely appeal the planning director's decision.  Id.

In this case, the Circuit Court found and it is uncontested that at least seven individuals who would later become members and officers of MLN received notice of the public meeting for DLNR's CUP application.  FOF 55.  Moreover, the MLN members and officers who testified at the evidentiary hearing before the Circuit Court admitted that they received notice of the hearing prior to the hearing date.  FOF 56.  However, none of these individuals reviewed the Planning Commission rules, nor did they contact a lawyer, the DLNR representative designated on the notice, or the Planning Department.  FOF 57.  At least five future officers, directors, and/or members of MLN attended the Planning Commission's hearing.  FOF 60.  Based on FOF 62 and testimony before the Circuit Court, Tina Hoenig, who would later become President and a director for MLN, and Spencer, who would become a member of MLN, testified at the Planning Commission hearing.  Two individuals who would become MLN members testified they heard the Planning Commission's decision to approve the CUP.  FOFs 65-66.  Finally, MLN does not dispute the Circuit Court's COL 6, that although MLN was incorporated after the public hearing, "[t]o the extent [MLN] claims to have succeeded to its officers' and members' interests, [MLN] is subject to the notice

that they received and is burdened by their failures to exhaust administrative remedies."

Based on these uncontested findings, MLN members and officers had notice that the Sports Park would be addressed through a special use permit and not a change in zoning, but failed to intervene in the CUP process or to maintain an appeal from the Planning Commission's decision to issue the CUP. The circumstances in this case are distinguishable from Kellberg.

The Circuit Court did not err in dismissing Count IX.

### 5. The Circuit Court Correctly Ruled That MLN Failed to Show the Futility Exception Applied

MLN contends that even if the exhaustion of administrative remedies doctrine applied, the Circuit Court erred by ruling that the futility exception recognized in Kellberg was inapplicable. Specifically, MLN asserts that any challenge before the Planning Commission to process the Sports Park through a CUP procedure, as opposed to a change in zoning, would have been futile because the Planning Commission would have been powerless to adjudicate these claims. MLN also contends it did not have adequate notice of the Planning Commission proceedings.

"Ordinarily, futility refers to the inability of an administrative process to provide the appropriate relief." Kellberg, 131 Hawaiʻi at 531, 319 P.3d at 450 (citation omitted). Likewise, "an aggrieved party need not exhaust administrative remedies where no effective remedies exist." Id. (citation, and brackets omitted). "The burden of proving that any particular administrative remedy is futile rests with the litigant seeking to bypass it." Id. at 531 n.22, 319 P.3d at 450 n.22 (citation and brackets omitted).

The assertion that MLN was provided inadequate notice has been addressed above and we reject that argument. With regard to MLN's further argument, MLN fails to show that the Planning Commission could not consider whether the CUP application should have been denied in favor of seeking a change in zoning. Indeed, MCC § 19.510.070(A), which the Planning Commission was required to follow, provides that "[a] special use

37

permit shall comply with the provisions of this section and with the policies and objectives of the general plan and community plans of the county, the Hawaii Revised Statutes, and the revised charter of the county."  Further, under MCC § 19.510.070(B), the Planning Commission was required to find that eight criteria were met before approving the CUP, including that "[t]he proposed request <u>meets the intent and purpose of the applicable district</u>[.]"  MCC § 19.510.070(B)(3) (emphasis added).[23]  The Planning Commission was thus required to find that the Sports Park met the intent and purpose of the County's agricultural zoning district for the property.

Moreover, if an appeal had been asserted or maintained from the CUP approval, MLN could have sought judicial review pursuant to HRS § 91-14 and challenged whether the Planning Commission's decision was, *inter alia*, "[i]n excess of the statutory authority or jurisdiction of the agency" or "[a]ffected by other error of law[.]"  HRS § 91-14(g).

We conclude MLN's assertion that it would have been futile to exhaust its administrative remedies is without merit.

### D.  Count V: HEPA Claims

In Count V, MLN summarizes its allegations as follows:

> 236.  As alleged in further detail below: **(a)** DLNR has an obligation to <u>supplement the Waiʻale [Final Environmental Impact Statement (**FEIS**)] because the Sports Complex uses are part of the Waiʻale project</u>, and the Sports Complex [Environmental Assessment] does not constitute as a [sic] supplementation for an EIS; and **(b)** State Defendants and/or County Defendants' actions or omissions constitute <u>illegal segmentation of a larger project because the Sports Complex is part of a larger project</u>, the Sports Development Initiative, and/or the Sports Complex is part of a larger plan to create a number of regional parks in Central Maui.

(Emphases added.)[24]  In short, Count V alleges that, due to the

_____

[23]  MCC § 19.06.010 (2013 Supp. No. 38) sets out the types of zoning "districts" that exist in the County of Maui, including an "Agricultural district".  In turn, MCC § 19.30A.060 (2013 Supp. No. 38) provides that certain uses and structures are permitted in the agricultural district if a special use permit is obtained pursuant to MCC § 19.510.070.

[24]  Count V contains numerous further paragraphs detailing the claim summarized in paragraph 236.

Sports Complex (which we refer to herein as the Sports Park), a supplement to the Waiʻale FEIS was required and there was illegal segmentation of the larger project.

The Circuit Court dismissed MLN's Count V claims on grounds that MLN failed to exhaust administrative remedies by not intervening in the CUP approval process and thereafter filing an HRS § 91-14 appeal for judicial review of the Planning Commission's decision. On appeal, MLN contends that exhaustion of administrative remedies is inapplicable to its HEPA claims, and that under HRS § 343-7 (2010) it has the right to raise issues regarding environmental impact statements by bringing a judicial proceeding. A&B counters that MLN's Count V HEPA claims are barred because MLN could have raised the HEPA issues in the Planning Commission's administrative proceedings, and because HRS § 343-7(b) (2010) sets time limitations for initiating a judicial proceeding related to an environmental impact statement.[25] A&B further points to the uncontested conclusion by the Circuit Court that the Planning Commission addressed HEPA compliance in its CUP determination and made specific findings that "[t]he proposed project is consistent with the environmental policies, goals, and guidelines expressed in Chapter 343 and 344, HRS." See COL 65(h).

The primary focus of the First Amended Complaint is to seek declaratory and injunctive relief related to the CUP issued by the Planning Commission for the Sports Park. Indeed, the Circuit Court made a determination that, except for Count VII (public nuisance), the counts in MLN's First Amended Complaint

___

[25] HRS § 343-7(b) provides, in relevant part:

**Limitation of actions**. . . .

(b) Any judicial proceeding, the subject of which is the determination that a statement is required for a proposed action, shall be initiated within sixty days after the public has been informed of such determination pursuant to section 343-3. Any judicial proceeding, the subject of which is the determination that a statement is not required for a proposed action, shall be initiated within thirty days after the public has been informed of such determination pursuant to section 343-3. . . .

"constitute challenges to the <u>validity of the CUP and its approval</u>."  FOF 101 (emphasis added).[26]  MLN does not expressly dispute this determination.

We conclude that, <u>to the extent the Count V claims constitute a challenge to the validity of the CUP</u>, the claims were properly dismissed for failure to exhaust administrative remedies.  Such claims seek declaratory relief that the CUP is invalid on HEPA grounds, but as discussed above, MLN members did not intervene in the Planning Commission proceedings from which they could have sought judicial review.  As found by the Circuit Court and not challenged on appeal, the Planning Commission considered whether the Sports Park complied with Chapter 343 and determined that it was consistent with Chapter 343.  MLN members could have intervened in the Planning Commission proceedings and could have appealed the issuance of the CUP under HRS § 91-14, but did not.

However, we must also conduct an independent review of the First Amended Complaint.

> Our review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

<u>Casumpang v. ILWU, Local 142</u>, 94 Hawaiʻi 330, 337, 13 P.3d 1235, 1242 (2000) (quoting <u>Norris</u>, 74 Haw. at 240, 842 P.2d at 637) (brackets and internal quotation marks omitted).

MLN's argument on appeal as to Count V is minimal.  But, it does assert that the Planning Commission did not have exclusive jurisdiction of its HEPA challenge.  Rather, MLN argues that the BLNR was the accepting authority for the EA prepared by DLNR for the Sports Park, referencing paragraphs 96 to 102 of the First Amended Complaint.  MLN apparently contends the BLNR,

---

[26]  Although the Circuit Court set out this determination in a finding of fact, we deem it a legal conclusion based on the Circuit Court's reading of the First Amended Complaint.  We are thus not bound by FOF 101.  However, it is noteworthy that MLN does not challenge the Circuit Court's reading of its First Amended Complaint.

rather than the Planning Commission, was the appropriate authority to address HEPA issues related to the Sports Park.

Given the allegations in the First Amended Complaint and MLN's arguments on appeal, to the extent MLN's Count V claims seek relief *other than* invalidating the CUP, we conclude dismissal of such claims on grounds that MLN failed to exhaust administrative remedies was improper.

Regarding A&B's assertion that HRS § 343-7(b) applies to bar MLN's Count V claims, that argument is based on whether MLN's Count V claims are timely. The Circuit Court did not reach the issue of whether the Count V claims were time-barred because it based its dismissal on exhaustion of administrative remedies. We likewise do not reach the question whether the Count V claims are time-barred.

**E.  Count VI: Claims Pursuant to Article XI, Section 9**

MLN contends that the Circuit Court has original jurisdiction to hear its Count VI claims under HRS Chapters 46, 205, and 343 because they are "environmental quality laws" cognizable under article XI, section 9 of the Hawaiʻi Constitution. Article XI, section 9 provides:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

Whether the exhaustion of administrative remedies doctrine or the primary jurisdiction doctrine apply to claims brought under article XI, section 9 is an issue of first impression. Given the plain language and history of article XI, section 9, as well as relevant case law, we hold that neither the exhaustion of administrative remedies doctrine nor the primary jurisdiction doctrine apply to claims brought under article XI, section 9 of the Hawaiʻi Constitution.

As discussed below, the Hawaiʻi Supreme Court has recognized that article XI, section 9 "has both a substantive and

a procedural component."  County of Hawaii v. Ala Loop Homeowners, 123 Hawaiʻi 391, 409, 235 P.3d 1103, 1121 (2010), *abrogated on other grounds by* Tax Found of Hawaiʻi v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019).  Considering these components for purposes of MLN's article XI, section 9 claims as defined by HRS chapters 46 and 205, we hold that the Circuit Court does not have jurisdiction pursuant to HRS § 632-1 given the legislature's reasonable limitations on declaratory judgment actions.  With respect to MLN's article XI, section 9 claim as defined by HRS Chapter 343, we hold: the Circuit Court also does not have jurisdiction pursuant to HRS § 632-1 to the extent this claim seeks to invalidate the CUP; but to the extent this claim seeks relief other than invalidating the CUP, the Circuit Court has jurisdiction.

## 1. Pertinent Case Law Regarding Article XI, Section 9 Claims

We first consider the contours of the rights established under article XI, section 9, as previously determined by the Hawaiʻi Supreme Court.  In doing so, we review Ala Loop and In re Application of Maui Electric Co., Ltd., 141 Hawaiʻi 249, 408 P.3d 1 (2017) (**MECO**) for context.

### a. Ala Loop

In Ala Loop, the Hawaiʻi Supreme Court held that article XI, section 9 "creates a private right of action to enforce chapter 205 in the circumstances of this case[.]"  123 Hawaiʻi at 394, 235 P.3d at 1106.  There, a dispute arose between a charter school and neighboring residents about whether the charter school was required to obtain a special permit to operate.  No permit had been issued in that case.  The County of Hawaiʻi filed a declaratory relief action, naming the charter school and a community association as defendants; the community association filed a cross-claim against the charter school asserting the right to enforce provisions of HRS Chapter 205.  Id. at 393, 235 P.3d at 1105.

In recognizing the community association's private right of action in that case, the Hawaiʻi Supreme Court expressed that:

> [article XI, section 9] has both a substantive and a procedural component. First, it recognizes a substantive right "to a clean and healthful environment," with the content of that right to be established not by judicial decisions but rather "as defined by laws relating to environmental quality." Second, it provides for the enforcement of that right by "any person" against "any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law."

Id. at 409, 235 P.3d at 1121 (emphasis added) (footnote omitted). The court further held that HRS Chapter 205 is a "law[] relating to environmental quality" within the scope of enforcement rights established by article XI, section 9, because it was a law relating to the conservation, protection, and enhancement of natural resources. Id. The court also relied on HRS § 607-25 as reflecting the legislature's determination that chapter 205 is an environmental quality law for purposes of article XI, section 9. Id. at 410, 235 P.3d at 1122. Additionally, the court held that article XI, section 9 was self-executing. Id. at 410-17, 235 P.3d at 1122-29.

As part of its analysis, the court recognizing that article XI, section 9 "provides that the legislature has the authority to impose 'reasonable limitations and regulation' on potential litigants . . . who seek to bring private actions to enforce laws relating to environmental quality." Id. at 417, 235 P.3d at 1129. However, the court rejected the charter school's argument that HRS § 205-12 (1993),[27] which provides enforcement authority to the counties, precluded the community association's private right of action under chapter 205. Id. at 417-18, 235 P.3d at 1129-30. The court reasoned that the charter school's interpretation of HRS § 205-12 would

> exceed the power granted to the legislature in article XI, section 9 to impose "reasonable limitations and regulation"

---

[27] HRS § 205-12 (1993) provides:

> **Enforcement.** The appropriate officer or agency charged with the administration of county zoning laws shall enforce within each county the use classification districts adopted by the land use commission and the restriction on use and the condition relating to agricultural districts under section 205-4.5 and shall report to the commission all violations.

> on the right of private enforcement. The inclusion of the word "reasonable" in that phrase clearly indicates that the power to limit or regulate is not unfettered. The abolishment of the private right altogether by HRS § 205-12, on the theory that the county would enforce the same underlying substantive interests, would not be a "reasonable" limitation within the meaning of the provision.

Id. at 418, 235 P.3d at 1130. Relying on Standing Committee Report No. 77, in 1 Proceedings of the Constitutional Convention of 1978, at 690 (**Standing Committee Report No. 77**), the supreme court expressed that:

> the framers understood that private enforcement would "complement" government enforcement, rather than be supplanted by it. The clear import of the passage is that "reasonable limitations and regulation" would encompass matters such as statutes of limitations or procedural or jurisdictional limitations. While such restrictions might preclude a particular plaintiff from bringing suit in a particular circumstance, the framers did not envision that they would be used to eliminate private enforcement altogether.

Id. (emphasis added). Notably, the court stated that the charter school "has not suggested that exhaustion or primary jurisdiction applies. Accordingly, we do not address whether the application of those doctrines would constitute a reasonable limitation or restriction under the facts of this case." Id. (emphases added).

Under the circumstances in Ala Loop, the supreme court held the community association had a private right of action under article XI, section 9 to enforce its chapter 205 claims such that the circuit court had jurisdiction. Id. at 422, 235 P.3d at 1134. No agency proceeding had been held in that case and no permit issued.

### b. MECO

In MECO,[28] the Hawai'i Supreme Court held that "under the circumstances of this case, the petitioners asserted a protectable property interest in a clean and healthful environment as defined by environmental regulations [HRS chapter 269]; that [an] agency decision adversely affected this interest;

---

[28] The opinion in MECO was issued after the Circuit Court's Final Judgment was entered in this case and after initial briefing on appeal. This court issued an order for the parties to file supplemental briefs addressing whether and how MECO affects the issues in this case, particularly as to MLN's article XI, section 9 claims and the doctrines of exhaustion of administrative remedies and primary jurisdiction.

and that a due process hearing was required given the importance of the interest, the risk of an erroneous deprivation, and the governmental interests involved."  141 Hawaiʻi at 253, 408 P.3d at 5 (emphasis added).

The case arose from an application filed by Maui Electric Company, Ltd. (**Maui Electric**) with the Public Utilities Commission (**PUC**), seeking approval of a power purchase agreement (**PPA**) with a third party.  Id. at 253, 408 P.3d at 5.  The Sierra Club filed a motion to intervene or to participate in the application proceedings, asserting a due process right to participate in a hearing.  Id. at 254, 408 P.3d at 6.  The PUC denied Sierra Club's motion to intervene or to participate, and issued a Decision and Order granting the application to approve the PPA.  Id. at 255-56, 408 P.3d at 7-8.  Sierra Club appealed from the Decision and Order to the Intermediate Court of Appeals (**ICA**), but the PUC and Maui Electric challenged the ICA's jurisdiction on grounds that the appeal did not arise from a contested case.  Id. at 256, 408 P.3d at 8.  After this court dismissed the appeal for lack of jurisdiction, the Hawaiʻi Supreme Court granted Sierra Club's application for writ of certiorari.  Id.

In addressing appellate jurisdiction, the Hawaiʻi Supreme Court first noted that "[j]udicial review over an agency appeal is authorized by HRS § 91-14" and further that "there are four requirements for judicial review over an agency appeal: a contested case hearing, finality, compliance with agency rule, and standing."  Id. at 258, 408 P.3d at 10 (emphasis added).  As to whether the PUC proceeding was a "contested case," the court noted a contested case hearing is one that, *inter alia*, is "required by law."  Id. (citations omitted).  "In order for an administrative agency hearing to be required by law, it may be required by (1) agency rule, (2) statute, or (3) constitutional due process."  Id. (emphasis added) (citations and internal quotation marks omitted).

The Sierra Club asserted a hearing was required by, *inter alia*, the due process clause in article I, section 5 of the

45

Hawai'i Constitution. Id. at 258-60, 408 P.3d at 10-12. The court thus considered whether the Sierra Club asserted a protected property interest such that procedural due process applied pursuant to the Hawai'i Constitution. See id. at 260, 408 P.3d at 12. The court explained:

> Article XI, section 9 is self-executing, and it "establishes the right to a clean and healthful environment, 'as defined by laws relating to environmental quality.'" Ala Loop, 123 Hawai'i at 417, 235 P.3d at 1127. This substantive right is a legitimate entitlement stemming from and shaped by independent sources of state law, and is thus a property interest protected by due process.
>
> Although a person's right to a clean and healthful environment is vested pursuant to article XI, section 9, the right is defined by existing law relating to environmental quality.

Id. at 261, 408 P.3d at 13 (emphasis added) (footnote omitted).

Sierra Club asserted a right to a clean and healthful environment as defined by HRS chapter 269, titled Public Utilities Commission. Id. The supreme court held that:

> HRS Chapter 269 is a law relating to environmental quality that defines the right to a clean and healthful environment under article XI, section 9 by providing that express consideration be given to reduction of greenhouse gas emissions in the decision-making of the Commission. Accordingly, we hold that Sierra Club has established a legitimate claim of entitlement to a clean and healthful environment under article XI, section 9 and HRS Chapter 269.

Id. at 264, 408 P.3d at 16.

Given its ruling that the Sierra Club was asserting a protectable property interest, the Hawai'i Supreme Court next addressed the procedures required by due process to protect the property interest created by article XI, section 9 as defined by chapter 269, and specifically, whether the Sierra Club was entitled to intervene in the PUC hearing.[29]

---

[29] The court expressed that:

> In determining the procedures required to comply with constitutional due process, we consider the following factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail.

(continued...)

As part of its analysis of the risk of erroneous deprivation, the majority in MECO rejected the dissent's position that if Sierra Club did not have a constitutional right to intervene in the PUC proceedings, it would not be deprived of any recourse because it could file a declaratory judgment action. Id. at 267, 408 P.3d at 19; see also id. at 277, 408 P.3d at 29 (Recktenwald, C.J., dissenting). As stated by the majority opinion:

> the dissent . . . takes the uncompromising position that the exclusive procedural mechanism for protecting an interest derived from article XI, section 9 is the private declaratory action that the provision authorizes. Dissent at 276-77, 408 P.3d at 28-29. The dissent's contention is not supported by the wording of article XI, section 9, which contains no such exclusivity language, nor by the due process clause of our Constitution, whose protections are not restricted by the right to pursue a declaratory action.

141 Hawaiʻi at 267, 408 P.3d at 19.

Thus, the Hawaiʻi Supreme Court held that, "under the circumstances of this case, the protected property interest in a clean and healthful environment asserted by Sierra Club necessitated a hearing by the Commission to consider the impacts of approving the Agreement on Sierra Club's members' right to a clean and healthful environment[.]" Id. at 21, 408 P.3d at 269 (emphasis added). The court thus concluded the ICA had erred in deciding there was no appellate jurisdiction over Sierra Club's appeal. Id. at 23, 408 P.3d at 271.

### 2. MECO Does Not Mandate The Circuit Court Had Jurisdiction Over MLN's Count VI Claims

In supplemental briefing in this case regarding how MECO affects MLN's article XI, section 9 claims and the doctrines of exhaustion of administrative remedies and primary jurisdiction, MLN asserts it is not limited to only one forum in asserting its constitutional claims. Rather, MLN contends that "a court will always have concurrent jurisdiction over a constitutional claim where that claim could have also been brought in an administrative proceeding." We disagree.

---

²⁹(...continued)
Id. at 265, 408 P.3d at 17 (citations and quotation marks omitted).

First, we note that the supreme court's holding in <u>MECO</u> is not supportive of MLN's assertion.  In <u>MECO</u>, the Hawaiʻi Supreme Court held that Sierra Club had a procedural due process right to intervene in the administrative hearing before the PUC. Contrary to MLN's interpretation of that decision, the <u>MECO</u> court did not hold that Sierra Club - the party asserting the article XI, section 9 claim in that case - was entitled to <u>both</u> an administrative hearing and a declaratory judgment action. Rather, the opinion in <u>MECO</u> reflects that no declaratory judgment action was filed.  The majority and dissenting opinions in <u>MECO</u> differed, *inter alia*, as to whether a declaratory judgment action would have provided adequate procedural protection, as opposed to an agency hearing.  However, the court did not hold that both types of proceedings were required in that case.

Second, we disagree with MLN given the Hawaiʻi Supreme Court's decision in <u>Punohu v. Sunn</u>, 66 Haw. 485, 666 P.2d 1133, which the County and A&B cite in their supplemental briefs.  As discussed previously, in <u>Punohu</u>, administrative hearings were held regarding reduction of welfare benefits and instead of appealing pursuant to HRS § 91-14, the benefit recipients filed lawsuits for declaratory relief, including claims that their due process rights were violated.  The Hawaiʻi Supreme Court noted that HRS § 632-1, relating to jurisdiction for declaratory judgments, provides in part, "[w]here, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed[.]"  66 Haw. at 487, 666 P.2d at 1134.  The court then held:

> Since the scope of review vested in the circuit court in an appeal pursuant to § 91-14, HRS, is much more limited than the court's plenary authority in an original action commenced before it, <u>it would be anomalous to permit a declaratory judgment action to be substituted for an appeal from an agency determination in a contested case. Accordingly, we hold that the remedy of appeal provided by § 91-14, HRS, is a statutorily provided special form of remedy for the specific type of case involved here and that a declaratory judgment action, pursuant to § 632-1, HRS, did not lie.</u>
>
> . . .
>
> Nothing prevented the appellees from raising, at the [agency] hearing, their contentions with respect to the

> inadequacy of the notice and, at oral argument, we were informed that they did so. <u>Their remedy from an adverse determination at that [agency] hearing was by way of appeal pursuant to Chapter 91, HRS, and not by way of an independent action for declaratory judgment</u>. Accordingly, the judgments below are reversed and the cases are remanded to the circuit court with instructions to dismiss them.

<u>Id.</u> at 487, 666 P.2d at 1135 (emphases added).

Thus, under <u>Punohu</u>, where the beneficiaries had the opportunity to raise their contentions in a contested case, and an agency determination was made, the proper remedy was an administrative appeal, even though the welfare beneficiaries asserted due process violations related to their benefits. An independent action for declaratory judgment was not allowed and the case was dismissed. Based on the foregoing, we reject MLN's assertion that under <u>MECO</u> a court will <u>always</u> have concurrent jurisdiction over a constitutional claim that could have also been raised in an agency proceeding.

### 3. Analysis for MLN's Article XI, Section 9 Claims

In <u>Ala Loop</u>, the Hawaiʻi Supreme Court recognized that article XI, section 9 "has both a <u>substantive</u> and a <u>procedural</u> component." 123 Hawaiʻi at 409, 235 P.3d at 1121 (emphasis added).

> <u>First</u>, it recognizes a <u>substantive right</u> "to a clean and healthful environment," with the content of that right to be established not by judicial decisions but rather "as defined by laws relating to environmental quality." <u>Second</u>, it provides for the <u>enforcement</u> of that right by "any person" against "any party, public or private, through appropriate legal proceedings, <u>subject to reasonable limitations and regulation as provided by law</u>."

<u>Id.</u> (emphases added).

Given this framework, the first step in analysing jurisdiction over a party's claims asserted under article XI, section 9 requires a determination that a party's claims arise under "laws relating to environmental quality." For purposes of defining "laws relating to environmental quality" under article XI, section 9, the Hawaiʻi Supreme Court has looked to HRS § 607-25.[30, 31] HRS § 607-25(e) authorizes recovery of attorney's fees

---

[30] <u>See</u> <u>Ala Loop</u>, 123 Hawaiʻi at 410, 235 P.3d at 1122 (explaining that HRS § 607-25 reflects the legislature's determination that HRS chapter 205 is
(continued...)

and costs in private party civil actions when a party undertakes development "without obtaining all permits or approvals required by law from government agencies[.]"[32]

Second, once it is established that a party's claims arise under a "law relating to environmental quality," the second sentence in article XI, section 9 provides: "Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law."  (Emphasis added.)  Thus, a second step in analyzing whether a court has jurisdiction over an article XI, section 9 claim is to consider whether there are "reasonable limitations and regulation as provided by law."

In this case, MLN contends it has asserted claims for relief under HRS Chapter 46, 205, and 343, which are "environmental quality laws," and thus such claims are cognizable under article XI, section 9.  The parties do not dispute that HRS Chapters 46, 205, and 343 establish "laws relating to environmental quality" within the meaning of article XI, section 9.  Thus, there is no challenge to the substantive component of MLN's article XI, section 9 claim.

Regarding the procedural component related to MLN's article XI, section 9 claims, we must consider whether there are "reasonable limitations and regulation as provided by law."  This

---

[30](...continued)
a "law[] relating to environmental quality within the meaning of article XI, section 9"); Protect and Preserve Kahoma Ahupuaʻa Ass'n 149 Hawaiʻi at 313, 489 P.3d at 417 (stating that HRS § 607-25 reflects the legislature's determination that HRS Chapter 205A is a "law relating to environmental quality" for the purposes of article XI, section 9).

[31]  HRS § 607-25(c)(2016) provides, in pertinent part:

> For purposes of this section, the permits or approvals required by law shall include compliance with the requirements for permits or approvals established by chapters 6E, 46, 54, 171, 174C, 180C, 183, 183C, 184, 195, 195D, 205, 205A, 266, 342B, 342D, 342F, 342H, 342J, 342L, and 343 and ordinances or rules adopted pursuant thereto under chapter 91.

[32]  We note that although this case involves DLNR and not a private party suing another private party, we see no reason that HRS § 607-25 would not be relevant here for determining the "laws relating to environmental quality" under article XI, section 9.

issue is grounded in the plain language and history of article XI, section 9.

The Hawaiʻi Supreme Court has recognized that "[a]rticle XI, section 9 provides that the legislature has the authority to impose 'reasonable limitations and regulation' on potential litigants . . . who seek to bring private actions to enforce laws relating to environmental quality." Ala Loop, 123 Hawaiʻi at 417, 235 P.3d at 1129 (emphasis added). Further, the most pertinent history regarding the procedural component of article XI, section 9 is set out in a report from the 1978 Constitutional Convention's Committee on Environment, Agriculture, Conservation and Land, which states in relevant part:

> Your Committee believes that a clean and healthful environment is an important right of every citizen and that this right deserves constitutional protection. The definition of this right would be accomplished by relying on the large body of statutes, administrative rules and ordinances relating to environmental quality. Defining the right in terms of present laws imposes no new legal duties on parties, a point of fairness important to parties which have invested or are investing large sums of money to comply with present laws.
>
> Developing a body of case law defining the content of the right could involve confusion and inconsistencies. On the other hand, legislatures, county councils and administrative agencies can adopt, modify or repeal environmental laws and regulation laws in light of the latest scientific evidence and federal requirements and opportunities. Thus, the right can be reshaped and redefined through statute, ordinance and administrative rule-making procedures and not inflexibly fixed.
>
> Your Committee believes that this important right deserves enforcement and has removed the standing to sue barriers, which often delay or frustrate resolutions on the merits of actions or proposals, and provides that individuals may directly sue public and private violators of statutes, ordinances and administrative rules relating to environmental quality. The proposal adds no new duties but does add potential enforcers. This private enforcement right complements and **does not replace or limit existing government enforcement authority**.
>
> Your Committee intends that **the legislature** may reasonably limit and regulate this private enforcement right by, for example, prescribing reasonable procedural and jurisdictional matters, and a reasonable statute of limitations.

> Your Committee believes that this new section adequately recognizes the right to a clean and healthful environment and at the same time would prevent abuses of this right. Concern was expressed that the exercise of this right to a clean and healthful environment would result in a flood of frivolous lawsuits. However, your Committee believes that if environmental law enforcement by government agencies is adequate in practice, then there should be few additional lawsuits, given the barriers that litigation costs present.
>
> Moreover, your Committee is convinced that <u>the safeguards of reasonable limitations and regulations **as provided by law** should serve to prevent abuses of the right to a clean and healthful environment</u>.

Standing Committee Report No. 77, at 689-90 (emphases added).

Given that article XI, section 9 empowers <u>the legislature</u> to impose "reasonable limitations and regulation" to enforce the rights under that provision, the question here is whether the exhaustion of administrative remedies doctrine or the primary jurisdiction doctrine can apply to limit enforcement of MLN's claims under article XI, section 9.  The Hawai'i Supreme Court has recognized that "<u>[c]ourts have 'developed</u> two principal doctrines to enable the question of timing [of requests for judicial intervention in the administrative process] to be answered: (1) primary jurisdiction; and (2) exhaustion of administrative remedies.'"  <u>Kona Old</u>, 69 Haw. at 92-93, 734 P.2d at 168 (quoting  B. Schwartz, Administrative Law § 8.23, at 485 (2d ed. 1984)); <u>see also</u> <u>Kellberg</u>, 131 Hawai'i at 527, 319 P.3d at 446.  Given that exhaustion and primary jurisdiction are <u>court-developed</u> doctrines in Hawai'i, we conclude they do not limit enforcement of article XI, section 9 claims.  Thus, the Circuit Court erred in dismissing MLN's article XI, section 9 claims pursuant to the exhaustion of administrative remedies doctrine.

However, as recognized in <u>Punohu</u>, the legislature has limited the jurisdiction of courts for purposes of declaratory judgment actions under HRS § 632-1, the statute that authorizes such actions.  HRS § 632-1 provides: "[w]here, however, a statute provides a special form of remedy for a specific type of case,

that statutory remedy shall be followed[.]"  Punohu, 66 Haw. at 487, 666 P.2d at 1134-35.  Given HRS § 632-1, the Hawai'i Supreme Court held that:

> it would be anomalous to permit a declaratory judgment action to be substituted for an appeal from an agency determination in a contested case.  Accordingly, we hold that the remedy of appeal provided by § 91-14, HRS, is a statutorily provided special form of remedy for the specific type of case involved here and that a declaratory judgment action, pursuant to § 632-1, HRS, did not lie.

Punohu, 66 Haw. at 487, 666 P.2d at 1135; see also Travelers Ins. Co., 64 Haw. at 386, 641 P.2d at 1337 ("Although section 632-1 generally endorses declaratory relief in civil cases, it nonetheless disallows such relief '(w)here . . . a statute provides a special form of remedy for a specific type of case.'").  The decision in Punohu was not based on exhaustion or primary jurisdiction.  Rather, it was based on the provisions of HRS § 632-1, as adopted by the legislature.

Applied to this case, therefore, HRS § 632-1 would preclude a declaratory judgment action because MLN had the opportunity to raise its article XI, section 9 claims in the contested case[33] before the Planning Commission and seek judicial review through an appeal provided by HRS § 91-14.  However, we must still determine whether, for purposes of article XI, section 9, HRS § 632-1 provides "reasonable limitations and regulation."  In Ala Loop, the Hawai'i Supreme Court held that HRS § 205-12 (1993) was not a "reasonable" limitation or regulation within the meaning of article XI, section 9.  The court held that HRS § 205-12 exceeded the power granted by article XI, section 9 to the legislature, because it would abolish the right of private enforcement altogether related to HRS chapter 205.  Id. at 418, 235 P.3d at 1130.

---

[33]  The hearing before the Planning Commission was a "contested case," which is defined as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."  HRS § 91-1 (2016).  MCC § 19.510.070 required the Planning Commission to review the application for the CUP and "after a public hearing" the CUP could be approved if the eight criteria set out in the provision were met.

Here, we conclude that HRS § 632-1 provides reasonable limitations and regulation of MLN's article XI, section 9 claims. First, HRS § 632-1 did not preclude MLN from asserting its rights under article XI, section 9 and thus from enforcing such rights. Unlike HRS § 205-12, which was considered in <u>Ala Loop</u>, HRS § 632-1 does not authorize only a government entity to ensure compliance with a law relating to environmental quality. <u>Ala Loop</u>, 123 Hawaiʻi at 418, 235 P.3d at 1130 ("The abolishment of the private right altogether by HRS § 205–12, on the theory that the county would enforce the same underlying substantive interests, would not be a 'reasonable' limitation within the meaning of the provision."). Rather, under HRS § 632-1, MLN could have fully asserted its rights under article XI, section 9 in the contested case before the Planning Commission and, pursuant to HRS § 91-14, obtain judicial review of the final agency decision issuing the CUP. Further, in cases where there is no agency decision from which an appeal under HRS § 91-14 can be taken, HRS § 632-1 would not preclude a party from enforcing its article XI, section 9 rights through a declaratory judgment action. Indeed, in <u>Ala Loop</u>, where no permit was issued and no agency hearing was held, the Hawaiʻi Supreme Court recognized a party's right to bring the declaratory judgment action in that case to enforce rights under article XI, section 9.

Second, HRS § 632-1 is consistent with the intent behind article XI, section 9. As expressed in Standing Committee Report No. 77, the "private enforcement right <u>complements and does not replace or limit existing government enforcement authority</u>. Your Committee intends that the legislature may reasonably limit and regulate this private enforcement right by, for example, prescribing <u>reasonable procedural and jurisdictional matters</u>, and a reasonable statute of limitations." (Emphases added.) In HRS § 632-1, the legislature authorized declaratory judgment actions, but provided a jurisdictional limit where "a statute provides a special form of remedy for a specific type of case." <u>Punohu</u> recognized that HRS § 91-14, authorizing judicial review from final decisions of an agency contested case, was such

a statute providing for a special form of remedy.  Here, this legislatively created limitation allowed for participation in agency action to enforce existing zoning requirements and to decide whether approval of the CUP was consistent with constitutional provisions, statutes and County plans, codes and regulations, which "complements and does not replace or limit existing government enforcement authority."  Further, HRS § 632-1 provides for a reasonable <u>jurisdictional</u> limitation to filing declaratory judgment actions, and such a jurisdictional limit was contemplated in Standing Committee Report No. 77.

Third, the limitation and regulation under HRS § 632-1 is reasonable to ensure that, when parties have proper notice and the opportunity to participate or intervene in an agency contested case, they do not ignore the agency action in favor of an alternative action at an unknown time.  In this case, County code provisions and administrative rules were in place to address the issuance of a special use permit for property zoned as an agricultural district under the County code.  In approving the CUP in this case, the Planning Commission determined that the eight criteria in MCC § 19.510.070 were met.  DLNR thus had its CUP application approved and no appeal was taken from the Planning Commission decision.  The limitation in HRS § 632-1, requiring that MLN seek judicial relief via the administrative appeal process under HRS § 91-14 preserves the integrity of the administrative process.

Fourth, HRS § 632-1 is akin to a legislative codification of the exhaustion doctrine, in that it requires a party to pursue available administrative remedies before seeking relief in the courts.  This is reasonable in that agencies often have expert or specialized knowledge in certain areas that are helpful in resolving issues, and agency proceedings allow the parties to create a fuller record for judicial review.[34]

---

[34]   <u>See</u> <u>U.S. Western Pac. R. Co.</u>, 352 U.S. 59, 64-65 (1956) ("[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.");

(continued...)

We thus conclude that HRS § 632-1 provides for reasonable limitations and regulation of article XI, section 9 claims. As noted above, MLN has grounded its article XI, section 9 claims on its allegations related to violations of HRS chapters 46, 205 and 343.

MLN's <u>article XI, section 9 claims defined by HRS chapter 46 and 205</u> challenge the validity of the CUP issued by the Planning Commission and seek declaratory judgment invalidating the CUP. The County code provisions and administrative rules were in place to address the issuance of the CUP for property zoned as an agricultural district under the County code. In approving the CUP in this case, the Planning Commission determined that the eight criteria in MCC § 19.510.070 were met. DLNR thus had its CUP application approved, and no appeal was taken from the Planning Commission decision. The limitation in HRS § 632-1, requiring that MLN seek judicial relief via the administrative appeal process under HRS § 91-14, preserves the integrity of the administrative process. This legislatively created limitation allowed for members of MLN to participate in the agency action to enforce existing zoning requirements and to decide whether approval of the CUP was consistent with constitutional provisions, statutes and County plans, codes and regulations, which provided for a reasonable limitation. Therefore, HRS § 632-1 precludes MLN's article XI, section 9 claims as defined by HRS Chapters 46 and 205.

With regard to <u>MLN's article XI, section 9 claim defined by HRS chapter 343</u>, we have recognized above that MLN's HEPA claims appear to challenge the validity of the CUP and also arguably seek broader relief. We conclude that, to the extent MLN's article XI, section 9 claim defined by HRS chapter 343 seeks a declaratory judgment that the CUP is invalid, HRS § 632-1

---

[34](...continued)
<u>Parisi v. Davidson</u>, 405 U.S. 34, 37 (1972) (citations omitted) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.").

precludes that claim.  To the extent that MLN's article XI, section 9 claim defined by HRS chapter 343 seeks relief other than to invalidate the CUP, such a claim is not precluded by HRS § 632-1.

### F. The Stay/Deferral Order Pending LUC determination of Count I.F. is moot

MLN argues that the Circuit Court erred in staying the entire case and deferring a claim that the Sports Park uses violated the June 21, 2012 LUC D&O, Count I(F), under the primary jurisdiction doctrine.  At a hearing on October 15, 2014, the Circuit Court referred Count I(F) to the LUC based on the primary jurisdiction doctrine, because there was a pending petition by MLN before the LUC.  The Circuit Court then stayed further proceedings in the case under Pavsek.  A little over a month later, on November 25, 2014, the parties advised the Circuit Court that the LUC had denied MLN's petition and the court scheduled further hearings to proceed with this case.

The State and A&B assert that this issue is moot, given the short duration of the stay and lack of any redress at this juncture.  Ultimately, the Circuit Court determined that Count I.F. is subject to the exhaustion of administrative remedies doctrine and dismissed Count I.F. with prejudice.  We conclude this issue is moot and no exception to the doctrine of mootness applies.

The Hawaiʻi Supreme Court has recently clarified that "mootness is an issue of justiciability, not an issue of subject matter jurisdiction." State v. Hewitt, 153 Hawaiʻi 33, 42, 526 P.3d 558, 567 (2023).  "[A] case is moot if the reviewing court can no longer grant effective relief." Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007) (emphasis and citation omitted).

> A case is not moot . . . so long as the plaintiff continues to suffer some harm that a favorable court decision would resolve.  If the requested remedies can be effectuated for the plaintiff, the issues presented are still "live" for judicial resolution.

Civil Beat Law Ctr. for the Pub. Int., Inc. v. City & Cty. of Honolulu, 144 Hawaiʻi 466, 476, 445 P.3d 47, 57 (2019) (citation, internal quotation marks, and brackets omitted).

Here, after the LUC declined to address MLN's petition, Count I(F) was ultimately dismissed with prejudice by the Circuit Court for failure to exhaust administrative remedies.  As discussed above, we conclude the Circuit Court did not err in dismissing Count I.  Thus, there is no relief that this court can provide on the question whether the Circuit Court properly stayed the case for a little over a month to allow the LUC to address a pending petition by MLN.  The issue is therefore moot.

## IV.  CONCLUSION

For the reasons explained above, we affirm the Final Judgment entered by the Circuit Court of the Second Circuit, except to the extent that Count V (HEPA) and Count VI (the article XI, section 9 claim defined by HRS Chapter 343), seek relief other than to invalidate the CUP.

The case is remanded to the Circuit Court for further proceedings consistent with this opinion regarding Count V (HEPA) and Count VI (the article XI, section 9 claim defined by HRS Chapter 343), to the extent those claims seek relief other than to invalidate the CUP.


On the briefs:

Tom Pierce,                          /s/ Lisa M. Ginoza
(Tom Pierce, Attorney at             Chief Judge
Law, LLLC)
   and                               /s/ Keith K. Hiraoka
Peter N. Martin,                     Associate Judge
(Peter N. Martin, Attorney
at Law, LLLC)                        /s/ Karen T. Nakasone
for Plaintiff-Appellant             Associate Judge

William J. Wynhoff,
Amanda J. Weston,
Deputy Attorneys General,
for Defendant-Appellee

Calvert G. Chipchase,
Christopher T. Goodin,
for Intervenor-Appellee